# HAWKINS *vs.* HUDSON.

[REAL ACTION IN THE NATURE OF EJECTMENT.]

1. *Mortgagee; purchase by, at own sale; sufficient to support action of eject-ment.*—A mortgagee may purchase the mortgaged premises at his own sale. Such sale is not void, but only voidable, and it is good until it is set aside. The title thus derived will support an action of ejectment.

2. *Same; mortgagee may maintain ejectment on title from mortgage.*—But if such a sale were void, then the mortgagee, after the law day, may maintain ejectment upon the title derived from his mortgage.

3. *Deed; what not fraudulent and void.*—A deed is not fraudulent and void because it was not read over to a party making it before it was signed, if such party did not request it to be read, and signed it without any deceit being practiced upon him to procure its execution.

4. *Deed for land; when not void for uncertainty.*—A deed for land is not void for uncertainty because it fails to show in its recitals the county where the land is situate. Such a defect is a latent ambiguity, which may be cured by parol proof.

5. *Same; not void when conveys more land than was intended.*—A deed for land is not void because its recitals show a conveyance of more land than was intended to be conveyed. It is good so far as it is correct. *Utile per inutile non vitiatur.*

6. *Possession of land by parol gift; what must be, to prevail against title of of bona fide holder of title from real owner.*—A possession under claim by parol gift, which will defeat a sale of land by the real owner during such possession, must be such as amounts to an ouster of the real owner, and it must be *bona fide*, notorious and distinct from that of the real owner, else it cannot prevail against the title of a *bona fide* purchaser for valuable consideration.

7. *Same; how far extends.*—A possession under pretense of a parol gift, without color of title, which will defeat a sale by the real owner to a *bona fide* purchaser for valuable consideration, only extends to the actual possession—to the land inclosed and under cultivation—and not to the whole tract, if it is not inclosed and under cultivation.

8. *Charge of court, consisting of several paragraphs; how must be construed.* A charge of the court which consists of several paragraphs consecutively numbered, must all be construed as one charge. If such a charge, taken as a whole, is applicable to the testimony as a whole, it is not erroneous because certain paragraphs omit to note portions of the evidence, when the evidence thus apparently omitted is properly brought to the notice of the jury in other paragraphs of the charge, and the charge as a whole is a proper declaration of the law applicable to the whole testimony.

APPEAL from Circuit Court of Jefferson.
Tried before Hon. W. S. MUDD.

THIS was a real action in the nature of ejectment, commenced by Hawkins (the appellant) against Hudson (the appellee).

The material facts of the case may be stated as follows : Dicey Dejarnette, mother of Mrs. Parmelia Jones, was the owner of the land in controversy from 1825 until the year 1853, when Mrs. Dejarnette conveyed the same to Mrs. Jones, (on certain conditions therein mentioned, not material to this cause, there being no evidence as to whether said conditions had or had not been broken,) and reserving to herself a life interest therein.

Some time in May, 1859, Hudson, who was sheriff of Jefferson county, had in his hands an execution against Mrs. Dejarnette and Mrs. Parmelia Jones ; and at the solicitation of Mrs. Dejarnette, loaned her money to pay the same, taking as security therefor a mortgage on certain property, including the land in controversy. This mortgage was executed on the 16th day of May, 1859, in proper form, by both Mrs. Dejarnette and Mrs. Jones, and was duly attested and recorded ; it describes the mortgaged property as follows, to-wit : " Isaac, aged forty-three years, the east half of the southwest quarter, west half of southeast quarter of section 14, township 17, range 3, west." The debt to Hudson was due January 1, 1860, which day was also the law day of the mortgage. On the 22d of March, 1869, the debt not having been paid, Hudson exposed the land for sale, in accordance with the power of sale in the mortgage, and became the purchaser thereof, making a marginal entry in writing on the mortgage, signed by himself, at the time of the sale, stating the amount bid for the land, and that he had become the purchaser at said sale.

This was the plaintiff's (appellee's) claim of title.

Hawkins introduced, as his claim of title, a deed duly executed by the same Mrs. Parmelia Jones, and also by Richard Jones, dated on the 23d of December, 1866, conveying the property in controversy to him, under which deed he had been in possession of the land ever since.

Mrs. Jones testified that, in the year 1853, she, in order to retain at home her son Richard, who was about to remove to Texas, told him if he would remain she would lend him some negroes, and he might have the land in controversy, if he would take it and improve it, the land at that time being " in the woods." The evidence shows that in the same year Richard Jones moved · on the land, built a house and made a clearing and inclosed part of the land with a fence, moved a family of negroes belonging to Mrs. Jones on the place. Shortly after this, Mrs. Jones moved on the place and lived most of the time with him on said land, though often spending part of her time with other of her children. Richard Jones continued in possession of the land from 1853 up to the time of the sale in 1865, except while absent in the army, during all of which time Mrs. Jones' negroes, with her consent, cultivated a crop on it for him. He spoke of the land as his, and his mother recognized his claim. It was further proved that the lands in controversy were always given in for assessment for taxes in Mrs. Dejarnette's name, by Richard Jones. Jones testified that he gave in the land in this way, with other lands of Mrs. Dejarnette, for convenience merely ; he sometimes furnished money to pay the taxes on all her property. Hawkins also proved that he concluded the trade for the purchase of the land with Richard Jones, but finding no conveyance to him on record, made inquiries of Mrs. Jones, who stated that the land belonged to her son, and that ' she had given it to him, and had once made a deed thereto, which had been lost," and for this reason he took the deed from Mrs. Parmelia Jones, Richard Jones joining in the same.

Mrs. Jones testified in relation to the execution of the mortgage to Hudson, that at the time it was executed, May 16th, 1859, Hudson was the confidential friend of her mother, Mrs. Dejarnette, who always consulted Hudson; that a few days before the mortgage was executed, she was sent for by her mother, and that while at her mother's she heard Hudson talking about the loan of money, and her mother offering to give a mortgage on a negro, and that that was all that passed between them on that day ; that a few

days afterwards, Hudson and a justice of the peace came to her mother's bringing paper and writing materials with them; that after getting to Mrs. Dejarnette's the justice of the peace and Hudson went into a room, and after staying a while called her into the room, and she signed the papers without reading them or hearing them read; that she did not know the land was included in the deed, and if she had known this, she would not have signed it; that at the time she signed it her mother was ill and not expected to live, and she signed the mortgage hurriedly in order to get back to her mother; she did not know why she signed, but supposed it was as a witness to the deed; that she knew nothing of the land by township, range and section, and she would not have known the lands by such designation."

Hawkins testified, in rebuttal, that when the mortgage was executed, he read it over to Mrs. Jones and Mrs. Dejarnette, and he thought the justice of the peace did the same; that he refused to lend the money on the negro alone; that he had attended to very many business matters for Mrs. Dejarnette, lived within a mile of her many years, and never heard of Jones' claim.

This was substantially all the evidence.

The court charged the jury as follows:

"1. That the sale made by the plaintiff on the 22d day of March, 1869, and the purchase made by him at said sale did not invest plaintiff with such a title as would enable him to maintain this action.

"2. But if the jury shall believe, from the evidence, that said mortgage or deed was made by Dicy Dejarnette and Parmelia Jones, was executed by them in good faith, to secure the plaintiff the loaned money specified therein, and that said money was loaned to them by plaintiff in consideration that they would execute said deed or mortgage, and the same was fairly obtained and voluntarily executed by said Dejarnette and Jones, for the purpose aforesaid; and that the money was not paid when this suit was commenced, and that it still remains unpaid; that then said mortgage or deed did convey such title to the lands sued for in this action as would authorize him to maintain the suit, provided the jury should believe that the land sued

for and the land conveyed in said deed or mortgage was the same.

"3. That if the jury shall believe, from the evidence, that there was no misrepresentation or fraud on the part of the plaintiff in procuring Mrs. Dejarnette and Mrs. Jones to sign or execute said deed or mortgage; that there was no mistake in said deed as to the property conveyed, and no deceitful practice or undue means resorted to by plaintiff to induce Mrs. Dejarnette and Mrs. Jones to execute the said mortgage or deed, but that the conduct of the plaintiff in regard to the same was just, proper and honest; that then the mere fact that said deed or mortgage was not read over to Mrs. Dejarnette and Mrs. Jones, or either of them, before the same was executed, or the mere fact that they or either of them may have supposed or believed that only the slave Isaac, and not the land, was conveyed in said deed or mortgage, would not render said mortgage or deed void or invalid.

"4. That said deed or mortgage was not void for uncertainty in the description of lands therein conveyed; that it was competent to identify the land by parol, and to show by parol that the land mentioned in the deed was situated in Jefferson county, Alabama.

"5. That if the jury shall believe, from the evidence, that Mrs. Jones and her son Richard Jones were living together, and that both were in the occupancy and possession of the land mentioned in the deed or mortgage at the time the same was executed and delivered, that the possession would be referred to the legal title, and that if Mrs. Jones had the legal title to the land, and was in joint occupancy or possession of the land when said deed or mortgage was executed and delivered, that then Richard Jones did not have such an adverse possession of said land as to render said deed or mortgage void."

The defendant excepted to the four last of these charges.

The defendant requested the court to charge the jury "that if they should believe from the evidence that previous to the execution of plaintiff's mortgage, or deed, the land sued for was in the woods, unimproved, and that Mrs. Jones told Richard Jones that he might have the land, and

take it and improve it, and build houses on it, and that under this verbal agreement Richard Jones went upon the land and built upon it, and lived in the houses built on it by him, and claimed said land as his own, and that Mrs. Jones went there and lived with him, recognizing the land as belonging to him, and that this was the case at the time plaintiff's mortgage was executed; that then Richard Jones was in adverse possession of the land when the mortgage was executed, and plaintiff's mortgage was void, and he could not recover."

This charge the court refused, but charged the jury that "if plaintiff had a knowledge of these facts at the time said mortgage or deed was executed, that then the possession of Richard Jones would, at least so far as plaintiff is concerned, be such an adverse possession as would render the deed or mortgage void." To the refusal of the court to charge as requested, and to the charge given, defendant excepted.

COBB & LEWIS, ELLIS PHELAN, and WALKER, MURPHEY & WINTER, for appellant.—The first charge is erroneous, for the following reasons : 1. The sale under the mortgage and the purchase by the mortgagee, were not void because, he purchased at his own sale, but only voidable, and stood good until set aside.—*Robinson v. Cullom & Co.,* 41 Ala. 693 ; *Carter v. Thompson,* 41 Ala. 375 ; *Eastern Bank of Alabama v. Taylor,* 41 Ala. 93. 2. The sale under the mortgage at which the plaintiff purchased was a foreclosure, and from the purchase at that sale the plaintiff (Hudson) ceased to claim as mortgagee, and had no semblance of right except as absolute owner. If he was any thing, he was the absolute owner. He is estopped, after having purchased under the mortgage, from saying that he still holds under the mortgage. The right of Hudson in this case is therefore to be tested upon the theory of his claiming a title derived from sale under the mortgage, and not as the first charge assumes, upon the theory of his claiming as mortgagee.

2. The second charge is wrong, for the following reasons : 1. It ignores the question, whether the land was adversely

held by Richard Jones at the date of the mortgage, and excludes that question from the jury entirely. It makes the valid execution of the mortgage conclusive evidence of the title necessary to a recovery, without regard to the question of Richard Jones' adverse possession.—See a collection of cases in Shepherd's Digest, pp. 385, 386. A charge which excludes from the jury the consideration of a material question, is erroneous.—*Bank of Mobile v. Brown,* 42 Ala. 108 ; *Farall v. State,* 32 Ala. 557 ; Shepherd's Dig. p. 462, § 71. 2. The second charge is also erroneous, in ignoring the evidence of a sale under the mortgage, and the purchase of Hudson at that sale. The sale of the entire property embraced in the mortgage, under the power embraced in it, extinguished the mortgage.

3. If the mortgagors in the mortgage by Mrs. DeJarnette and Mrs. Jones to Hudson, signed in ignorance of its contents, not having heard it read over, and believed that only the negro was conveyed, and that the land was not conveyed, then the inference of fraud is legitimate. The charge is inconsistent with itself.' It commences with the hypothesis of the absence of fraud, and concludes with a hypothesis strongly conducing to show fraud, and directs the jury that upon the two conflicting hypotheses the plaintiff must recover. Upon the latter hypothesis the deed was void.—*Paysant v. Ware & Waring,* 1 Ala. 160 ; *Waddell v. Glassell,* 18 Ala. 561.

4. The only description of the property conveyed is in the words following, to-wit : " First, Isaac, aged about forty-three years, the east half of the southwest quarter of the west half of the southeast quarter of section 24, number 17, range 3, west." It does not appear *expressly* that it was intended to describe land. That land was intended at all, can only be made out by inference from the mode of description. Whether the land is situated in Alabama or some other State, or whether in Jefferson or some other county, can not be told. The ambiguity is *patent* upon the face of the paper. A surveyor could not find the land from the description. The deed is, therefore, void.—1 Greenl. Ev. § 297 ; *Pollard v. Maddox,* 28 Ala. 321. The first and second clauses of the fourth charge are erroneous. It is

not a case·for the application of the doctrine, "*Id certum est quod certum reddi potest.*" In order to explain the ambiguity, an addition must be made to the deed; this can not be done where (as is the case here,) the ambiguity is patent.

5. There is error in the fifth charge. 1st, The evidence conduces very strongly to show that Mrs. Jones, when on the land, after the transfer in 1853, was a mere visitor. She sometimes staid as a visitor with her son Richard, and sometimes with her daughters. The fifth charge refers the possession to Mrs. Jones' deed, notwithstanding the strong tendency of the evidence. If Mrs. Jones was on the place of her son as a mere visitor, then she was not in possession at all, and had no possession to refer to any title. 2d, The principle is, that if two persons are in possession, one holding wrongfully and the other having title, the possession will be referred to the title.—Angell on Lim. § 410, p. 413, *et seq.* In this case, there is not the slightest justification in the evidence for assigning to Richard Jones the position of a trespasser. He was clearly not a wrong doer. It is not certain from the evidence, whether he had a deed of gift from his mother, or whether the gift was by parol. Mrs. Jones thinks she made a deed, which is lost. Be that as it may, Richard Jones was in possession by permission of the true owner (his mother), and was authorized by her to possess and to claim the land as his own. How can the possession be attributed to Mrs. Jones' title, when she places her son in possession and authorizes him . to possess and claim the land as his own? 3d, Mrs. Jones received the entire title from her mother (Mrs. Dejarnette). The deed of Mrs. Dejarnette first conveys the title after the grantor's death, but afterwards in the same deed the grantor covenants to stand seized during her life time to the use of Mrs. Jones, thus investing her with the entire beneficial interest in the land from the date.

6. The court certainly erred in the refusal to give the charge asked by the defendant. Every element of an adverse possession is set forth in the charge. The court, while strangely refusing the charge, afterwards gives it with the addition that the plaintiff should have had know-

32

ledge of the facts set forth in the charge asked at the time when the mortgage was executed to him. This makes the defense of an adverse possession depend upon carrying *actual notice* home to the party. This is not the law ; it is sufficient that the adverse possession is open and notorious. It has never been held that personal notice must be given.—Angell on Limit. § 392, p. 381 ; *Farley v. Smith*, 39 Ala. 38, and the authorities cited on page 44. A parol gift of land, followed by the making of improvements, building houses, clearing and fencing land and living upon it will constitute color of title. Under those facts, the person to whom the parol gift was made could go into chancery and compel a specific performance.—*Danforth v. Lang*, 28 Ala. 274.

7. The adverse possession is available to sustain the defense of maintenance, or of the statute of limitation.

G. W. HEWITT, *contra*.—The legal title having vested in Hudson, by virtue of the mortgage deed, there was no necessity of any reconveyance to himself. The sale was only made to foreclose the mortgage, and is good for that purpose until set aside by a court of chancery.—*Charles v. Dubose*, 29 Ala. 367.

After the law day of the deed, the legal estate vested absolutely in Hudson, and nothing was left to the mortgagors, save the naked right of redemption. And nothing less than a payment of the mortgage debt, a release in writing, or a conveyance in terms, could operate in a court of law as a divestiture of the legal title.—*Paulling v. Barron*, 32 Ala. 9 ; *Barker v. Bell*, 37 Ala. 352.

The mortgagors, after the law day of the deed, were but tenants at will, and the mortgagee could at any time after that put them out of possession by ejectment ,or other proper suit.—4 Kent, 155, marg. ; *Erskine v. Townsend*, 2 Mass. 493 ; 1 Lomax Dig. 326.

The third charge asserts a correct principle of law. If Mrs. Jones signed said deed, not knowing what property it conveyed, without any improper conduct on the part of Hudson, then any injury or damage which she may have sustained grew out of her own negligence, and Hudson

must not be made the sufferer.  It is the diligent and not
the negligent the law aids.—*Hallenbeck v. De Witt*, 2 John.
404; *Jackson v. Cray*, 12 Johnson, 469.

The fourth charge asserts an old principle of law; that
is, that latent ambiguities can be explained by parol and
illustrated by the familiar example of "black-acre."

The fifth charge is correct for several reasons.  First,
the question of an adverse possession does not arise in the
case at all.  The parties all claimed through Mrs. Dejar-
nette and Mrs. Jones.  The only question is, which had
the paramount title.—1 Lom. Dig. 621.  Secondly, there
was no such adverse possession by Richard Jones as could
avoid the mortgage deed.  He was not a purchaser,
but claimed only under a parol gift, which was fraudulent
as to subsequent purchasers for value, without notice.
*Kirksey v. Kirksey*, 8 Ala. 131; *Forward et al. v. Armstead*,
12 Ala. 124; Roberts on Frauds, 2 Ala. 625; *Sterny v. Ar-
den*, 1 Johns. 261, and the authorities there cited.

To avoid a sale on account of adverse possession in
another, the claim must be *bona fide*.  The language of our
court is, " if the claim be founded in fraud, his fraud shall
not avail him to avoid the title of a purchaser for valuable
consideration, without actual notice of the claim.  The law
sets the seal of its decided condemnation upon such a
claim, holding it unavailing for any purpose at any time as
against those intended to be defrauded.  In the language
of Mr. Roberts, " all the partialities of the law expire under
its antipathy to fraud."—*Hinton v. Nelms*, 13 Ala. 230.

Mrs. Jones remaining in possession of the land is a badge
of fraud, and the law would presume that, as she subse-
quently sold to Hudson for a valuable consideration, the
parol gift to her son would be fraudulent, and the law re-
fers the fraud back to the date of the gift.—*Sterny v. Alden*,
1 Johns. 261, and the authorities there cited.

Hawkins, claiming under Mrs. Jones, is estopped from
denying her title.—*Pollard v. Coke*, 19 Ala. 198 ; *Garrot v.
Cowen*, 27 Ala 532.

Richard Jones, claiming under a verbal gift from his
mother, is an acknowledgment of her title, and he could
not be heard to deny or dispute the same as against one

claiming under her.—*Sellers v. Cook*, 17 Ala. 752; *Farley v. Smith*, 39 Ala. 42.

A possession, to avoid a deed, must be actual, visible, notorious, hostile, and exclusive.—Smith Leading Cases, note to the case of *Taylor v. Harde;* 28 Law Lib. N. S.

Here, at the time this mortgage was executed, Mrs. Jones was in possession and occupying the land, holding the legal title; and although her son was in possession with her, the law refers the possession to the title.

The charge asked should not have been given for several reasons. Before an adverse possession under parol can arise, there must be an actual occupancy "*a pedis possessio*," a substantial inclosure by fence, and must be marked by definite boundaries.—*Livingston v. Penn. Iron Company*, 9 Wend. 511. The charge should not have been given, because, as Mrs. Jones was in possession, living upon the land, her negroes cultivating the same, she holding the title, Hudson having no notice whatever of the claim of Richard Jones, he had the right to purchase of Mrs. Jones, and his purchase could not, and would not fall within any of the mischiefs intended to be guarded against by the statute of 32 Henry VIII, in regard to the purchase of pretended titles. Hudson is an innocent purchaser, and from one holding the legal possession of the land occupying and cultivating it.

Richard Jones, if he claimed any interest in said lands, it was the interest of his mother. He made no claim as against Mrs. Dejarnette. The mortgage conveyed the interest of Mrs. Dejarnette, as well as that of Mrs. Jones. Mrs. Jones claimed an interest in the land by virtue of the deed made by Mrs. Dejarnette to her, set out in the bill of exceptions. This deed conveyed to Mrs. Jones the land in controversy, after the death of Mrs. Dejarnette, upon the condition of Mrs. Jones paying at the death of Mrs. Dejarnette a certain sum of money to Mrs. Littlepage.

PETERS, J.—This is an action of ejectment, and the validity of the proceedings in the court below depends upon the accuracy or the inaccuracy of the charges of the court on the trial before the jury.

Hawkins v. Hudson.

There were five charges given by the court *mero motu*, the last four of which were excepted to. But the first was not excepted to. The defendant below also asked one charge, which was refused, and the defendant excepted. And thereupon the court gave a charge in lieu of the charge thus asked and refused, which charge was also excepted to. None of the charges given or refused appear to have been moved for in writing.

The charge of the court must all be taken together. The mere fact that the charge is delivered to the jury in several paragraphs consecutively numbered, does not destroy its unity. If a charge so given is applicable to the whole testimony, and is not an improper annunciation of the law, taken as a whole, it cannot be said to be abstract and erroneous for that reason, or to ignore the proof.

Here, it is insisted that the paragraph of the charge numbered *two* is erroneous, because it ignores the evidence of a sale under the mortgage. But this evidence was disposed of in the paragraph of the charge numbered *one ;* and that paragraph was in favor of the defendant below, who, as appellant, can not complain of it here, because it did not injure him, and it was not excepted to on the trial. A like objection is urged against said paragraph number *two* of the entire charge, because it ignores the evidence of the parol gift by Mrs. Jones of the lands in controversy to her son Richard. But this seeming defect is supplied by the paragraph of the charge numbered *five*. This paragraph is devoted to this part of the evidence, and its effect is not omitted to be brought to the notice of the jury. The same may be said of the other objections of this character. But it will be seen on reference to the record that all are ill taken. The charge, taken as a whole, is based upon the testimony taken as a whole, and there is not any failure in some part of the charge to bring the whole testimony to the notice of the jury. Such a charge cannot be said to ignore the evidence, and to be erroneous for this reason or because it is abstract.

There was evidence tending to show a sale of the mortgaged premises, under a power given in the mortgage deed for that purpose. This sale was made, as the mortgage

required, after the law day had passed, and the mortgage became the purchaser at such sale. The plaintiff, Hudson the mortgagee, was then vested with title by this sale sufficient to support this action when the suit was brought. A purchase by a mortgagee at his own sale is not void, but only voidable. It is good until it is set aside.—*Robinson v. Cullom & Co.*, 41 Ala. 693, 700, and authorities there cited. But if that sale was void, or had been set aside yet the mortgagee, after the law day, might sue to recover the land mortgaged, in ejectment, or by the statutory action in this State which is in lieu of ejectment.—*Paulling v. Barron, Meade & Co.*, 32 Ala. 9, 11 ; *Baker v. Bell*, 37 Ala. 354 ; 4 Kent, 155, 156, 193, 194. The paragraph of the charge numbered *two* is in conformity with the law thus settled. It is therefore correct.

The paragraph of the charge numbered *three* is not erroneous. A deed is not fraudulent and void because it was not read over to the parties making it, before it was signed. If a party sign a deed without knowing its contents, or seeking to know, it is not fraudulent, unless the signature has been procured by some deceit. Nothing of that kind is pretended in this case. Then this portion of the charge was correct. One can not be relieved from his own want of vigilance, where there is no deception practiced upon him.

The failure to name the county in which the lands conveyed were situated, did not render the deed void. This was but a latent ambiguity, and may be supplied by parol proof.—1 Greenlf. Ev. §§ 297, 301 ; 2 Phill. Ev. H. and C. Notes, p. 761, and cases there cited. The *fourth* paragraph of the charge does not go beyond this, and it is not objectionable as a proper statement of the law, under the facts of this case.

The law as laid down in the *fifth* paragraph of the charge is free from error. And there was some proof tending to show facts upon which it might be properly based.

The charge asked by the defendant below was properly refused. The tenancy of Richard Jones was simply an occupancy under permission of his mother and Mrs. De-

jarnette, each of whom had title to the lands in contro-versy. It was not such a possession as made his tenancy adverse to his mother and Mrs. Dejarnette, or such as would amount to notice to Hudson, as their mortgagee, of his superior claim. He had no title at law or in equity that he could enforce against them, much less against Hudson, who was a *bona fide* mortgagee for valuable con-sideration, without notice.—*Kirksey v. Kirksey*, 8 Ala. 131; *Forward et al. v. Armstead*, 12 Ala. 124 ; *Ste~~y v. Arden*, 1 John. ch. 261. He did not pretend to hold adversely to Mrs. Dejarnette, in whom there was a life estate after the conveyance to her daughter, Mrs. Jones. And the estate of Mrs. Jones herself depended on a condition. The charge asked ignores these facts, which appear from the deed of Mrs. Dejarnette to Mrs. Jones, and also the fact that the lands were treated by Richard Jones himself as the lands of Mrs. Dejarnette in paying taxes on the same as her lands. To give an adverse possession the validity to oust the owner and amount to a disseizen, it must be asserted under "a *bona fide* claim to the property in so ver-itable, notorious and distinct a manner" as to charge the purchaser with notice.—*Herbert v. Hanrick*, 16 Ala. 581, 569. It is said that " where one enters not under any deed or written title, but merely assuming the possession with claim of right, the ouster he effects extends no further than he occupies, cultivates, encloses, or otherwise excludes the owner from." That was the case here. The entry, if any, was without color of title. It did not then go beyond the actual enclosure.—2 Smith's Lead. Cases ; Hare and Wal. Notes, p. 560, *et seq.* The charge asked went much beyond this. It was, therefore, properly refused.

The charge given by the court after the refusal of the charge asked by the defendant, was only too favorable to the defendant. It was based upon the assumption that the possession of Richard Jones was *bona fide*, and adverse to the possession of both Mrs. Dejarnette and his mother. This was more favorable than a strict construction of the evidence would justify. It admits of grave question whether the claim of Richard Jones to the lands in contro-versy was *bona fide*, and if there was any proof at all, it

was extremely weak, that his possession was hostile, visible, notorious, and distinct from that of his mother, and grand-mother, Mrs. Dejarnette. Yet these facts were necessary to be shown.

I therefore think that the action of the court below was free from error, and that its judgment was right. Consequently it is affirmed.