## Nelson, et al. v. Johnson, et al.

(Decided December 7, 1920.)

Appeal from Kenton Circuit Court
(Criminal, Common Law and Equity Division).

1. Adverse Possession—Possession Not Alone Evidence of.—The bare. possession of land, though actual, is not alone, evidence of

an adverse holding, because the possession is always presumed to be subservient to the title of the legal owner.

2. Evidence—Statement of Acts Done by One Deceased.—Under section 606, subsection 2, one may testify, for himself concern-ing verbal statements of or acts done or omitted to be done by one who is dead, when the testimony is offered to be given, when the offered testimony is only for the purpose and to the extent, it affects one, who is living and when over fourteen years of age and of sound mind heard such statement, or was present when such act was done or omitted to be done.

3. Witnesses—Competency.—A party is a competent witness, un-less all the adverse parties are parties against whom he could not testify, if they were suing or had been sued singly.

4. Adverse Possession—To Create Title By.—To create title to land by adverse possession, it must be shown that the claimant had actual, open, notorious, exclusive and adverse possession for the statutory period.

5. Adverse Possession—Actual Possession.—An actual possession of land is such a possession as, in general, indicates an exclusive ownership, and is usually shown by a residence thereon, an in-closure of a portion of the lands, or their cultivation, or at least in every instance such use of the lands as is practical and such use as such lands are ordinarily subjected to.

6. Adverse Possession—Actual Possession.—An adverse posses-sion of lands by a claimant is the taking of actual possession and holding them with the purpose to take and hold them as his own to the exclusion of all others.

7. Adverse Possession—Actual Possession.—When one takes actual possession of a well defined boundary of land, under an un-qualified parol gift, his holding to the boundary of the lands is presumed to be adverse to the title of the donor, whether or not all the lands embraced in the boundary are enclosed or cultivated.

8. Adverse Possession—Actual Possession—Parol Gift.—One in actual possession of lands, under a parol gift, where the boundaries are not well defined, is only in the actual posses-sion of such portions of the land, as he incloses or cultivates, and he has no actual possession by construction, of any other portion.

9. Adverse Possession—Limitation of Actions.—Where one is in actual possession of a boundary of land under a parol gift, and the statute of limitations has not yet ripened his adverse pos-session into a title, the owner or his heirs may enter and ar-rest the running of the statute but such entry must be accom-panied with the purpose to repossess the lands, and with an express declaration to that effect or such acts as will notori-ously manifest the purpose of so doing.

10. Adverse Possession—Cutting Timber—Trespass.—An occasional entry for the purpose of cutting timber will not of itself disturb

an adverse possession, nor will a mere trespass with force upon the personal property of the occupant have that effect.

JOHN B. O'NEAL and R. C. SIMMONS for appellants.

SAMUEL W. ADAMS for appellees.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

In this action of ejectment, between the appellants, Thomas H. Nelson and William K. Nelson, whom we will call the plaintiffs, and the appellees, Moses Johnson and Fred Johnson, whom we will hereafter call the defendants, the ownership of a tract of fifty acres of very rough and broken land was involved. The plaintiffs and defendants claim to have derived title to the lands from a common source. The plaintiffs claim title to the tract by inheritance from their father, Hayden Nelson, who in turn inherited it from his father, Thomas H. Nelson, the grandfather of plaintiffs, and to distinguish him from one of the plaintiffs we will hereafter call him, the elder. The defendant, Moses Johnson, asserted title to the land from a parol gift to him by Thomas H. Nelson, the elder, and a continuous, peaceable and adverse occupancy of it by virtue of the gift, thereafter, for the necessary statutory period to create title by adverse possession. Thereafter, he conveyed it to his son, Fred Johnson, who during the pendency of the action, reconveyed the tract of land to Moses Johnson. A trial resulted in a verdict of the jury and a judgment of the court in accordance therewith, awarding the ownership of the land to the defendant, Moses Johnson.. The plaintiffs' motion for a new trial having been overruled, they have appealed.

The averments of the answer of defendants, setting up title to the land by adverse possession, were denied. It was conceded by agreement, however, that the plaintiffs' title to the land was valid and they were entitled to recover it, unless the adverse possession, under claim of right by the defendants, had existed and had ripened into a title in favor of Moses Johnson. The burden of proof was thus cast upon the defendants, which they assumed.

(1) The chief grounds upon which a reversal is urged are (a) The facts proven by the evidence, when their truth is admitted, were insufficient to warrant the submission of the action to the jury, and (b) the verdict was flagrantly against the weight of the evidence, and (c) the court erred in instructing the jury. Entertain-

ing the view, that the evidence was insufficient to require a submission to the jury the plaintiffs, at the close of the evidence for defendants, and at the close of all the evidence, moved the court to direct a verdict in their favor, both of which motions were overruled. Before considering the above stated objections to the judgment it will be necessary to consider the objections which plaintiffs made on the trial to the admissibility of the testimony of certain witnesses. The defendant, Fred Johnson, who otherwise would have been a competent witness to testify as to any relevant verbal statement, or act done, or omitted to be done, by Thomas H. Nelson, the elder, touching the transactions between him and the defendant, Moses Johnson, and who was rendered incompetent so to do, because he had reconveyed the land to Moses Johnson by a deed, with clause of general warranty; and Moses Johnson, himself, were permitted to testify to certain verbal statements made and transactions with the elder Nelson, who was dead at the time of the trial, but they deposed that the statements were made by and the transactions with the decedent, were had in the presence and hearing of the plaintiff, Thomas H. Nelson, who heard the statements and witnessed the transactions, and who was at the time above fourteen years of age. Section 606, subsection 2 and its subsections do not prohibit one from testifying in his own behalf concerning a verbal statement of, or a transaction with, or an act done, or omitted to be done by one who is dead at the time the testimony is offered to be given, when the offered testimony is for the purpose, and only to the extent it affects one who is living and when "over fourteen years of age and of sound mind, heard such statement or was present when such transaction took place, or when such act was done or omitted." The plaintiff, William K. Nelson, was not present at the doing of the acts, nor the making of the statements by decedent concerning which the Johnsons testified, but the general rule applicable is, that a party is a competent witness unless all the adverse parties are persons against whom he could not testify, if they were suing or had been sued singly. Worthley v. Hammond, 13 Bush 510; Allen v. Russell, 78 Ky. 105. The plaintiffs endeavored to prove that the running of the statute of limitations, relied on by the defendants, was interrupted, in 1906, by an entry made upon the lands by the plaintiffs, by sending men thereon to cut timber trees. One of these men was per-

mitted to testify, that, at the time they were cutting the trees, the defendant, Moses Johnson, had knowledge of the fact, but protested and complained of an invasion of his rights, and the latter statement as evidence is complained of. So far as the testimony makes apparent, the witness was an agent of the plaintiffs in cutting the trees. It was admissible for the plaintiffs to have proven upon the issue of adverse possession, that the defendant acquiesced in the cutting of the trees without protest, as tending to prove that he did not claim ownership of the land, nor its exclusive possession, and in fact the plaintiffs offered witnesses, who were of the cutters, and who made declarations to the effect, that, Johnson had knowledge of their operations and remained silent, and it is not apparent why the statements of the one who deposed that the defendant, Johnson, protested, was not competent upon the issue of ownership and possession. The declraations of one, while in possession of land, are competent to be proven, as illustrative of the character of his holding, and the intent with which he is holding the possession.

(2) To sustain a claim of title arising from the adverse possession of lands, for the statutory period of limitations, it must be proven to the satisfaction of the jury, by competent and legal evidence, that the claimant had an actual, open, notorious, exclusive and adverse possession, continuously, during the period. To determine whether the necessary elements which go to make up an adverse holding of lands for the necessary period of limitation, it is necessary to consider the circumstances attending the possession, and the acts and declarations of the claimant, while in possession, as well as the relation of the legal title holder to the claimant. As remote as twenty years previous to the war between the states, the elder Nelson was the owner of a large farm containing about 375 acres, all the acreage of which, although situated in a very irregular shape, was contiguous and upon which he resided and continued to reside until his death in February, 1897, at the age of 89 years. At the northern end of the farm was situated a portion of it, which was originally a separate tract of land and is called the Glore farm, after one of its owners, who preceded the elder Nelson in the proprietorship of it. It contained about 87 acres and was contiguous to the other lands of Nelson only upon the western side of it. Upon the other three sides, it adjoined the lands of

other proprietors. A creek called Bullock Pen entered the tract near its northwestern corner and proceeding to its southwestern corner, turned through the tract and passed out from it near the middle point of its eastern boundary line. Fifty acres of the Gore farm is the tract of land in controversy. The defendant, Moses Johnson, was born at a home upon the farm of the elder Nelson about the year, 1835, the child of a slave woman. It does not appear, who was the owner of Johnson at the time of his birth, but he became the slave of the elder Nelson, when he was four years of age. He resided upon the farm in the service of his master, until during the war between the states, he was drafted into the military service of the federal government and continued therein for over three years, but upon being discharged from that service, he returned to his former owner, who provided him with a home upon his lands, where he remained several years, and then removed to a nearby place, but at the expiration of about two years from the time he left his former owner's premises, he was again residing upon the farm, but in a cabin upon the portion of the land, which is now in controversy. This was about the year 1872 or 1873. He resided with his family upon the tract in controversy from that time continuously, and without any interruption, until about the year 1915, a period of over forty consecutive years, when as he claims, he ceased to dwell upon the land because of the dilapidated condition into which his dwelling had fallen, and on account of his age he was unable to repair it and that he left the land without any intention of abandoning it, but only until he could secure the repair of his dwelling, or cause another to be erected, when he intended to return to it to reside, and that since he had ceased to live upon it, he had continued to claim it as his, and to cause such portions of it, as were cultivatable, to be cultivated each year, and otherwise exercised dominion over it, up and until the bringing of this action in January, 1918. He conveyed the land to his son, Fred Johnson, on January 16, 1917, without any consideration, except to enable the latter to erect him another dwelling upon the land, and to care for him, and Fred Johnson reconveyed the land to him in March, 1918, without consideration, except a rescision of the contract by which it was conveyed to him and to escape the troubles of the pending litigation. During the years from 1873, until the death of the elder Nelson in 1897,

the evidence shows that the defendant, Moses Johnson, performed various services for his former owner, when requested, such as procuring and preparing his fuel, conveying the various products of the farm to market, and in fact any and every thing which the elder Nelson requested him to do, and whether he was remunerated for these services in any way, does not appear.

(a)  An actual possession is such a possession as, in general terms, indicates an exclusive ownership of the property, and this is usually shown by a residence thereon, an enclosure of at least a portion of the lands, or their cultivation, or at least in every instance such use of the lands as is practicable, and for the purposes for which such character of lands are ordinarily used. The evidence proved, without dispute, that Moses Johnson resided upon the land continuously from 1873 until 1915, and thereafter held the actual possession by cultivating the cleared lands up until 1918.  Within the tract there were about fourteen or fifteen acres of cleared lands, lying in three different bodies, one around the dwelling, containing six or seven acres, another opposite the dwelling, and across the creek from it, containing $2\frac{1}{2}$ acres, and, another east of the dwelling containing six or seven acres, and these lands the defendant cultivated or caused to be cultivated each year and appropriated the proceeds to his own uses. The remainder of the tract seems to have been very broken, steep and hilly, unfitted for cultivation and covered with trees. At different times the defendant had inclosed different portions of the woodland and used it for purposes of pasture, cut timber and firewood from it, and made such uses of the land as are customary with owners of his estate to use such lands.  From time to time, he cut and sold fencing posts and trees for other timber purposes from the land, and rented the lands to tenants, who cultivated the fields and paid the rent to him.  For two years before the death of the elder Nelson the defendant with the knowledge of Nelson, had a tenant upon the land, who resided in a house, which he erected thereon, and who cleared several acres of the lands. Of course, the above stated acts of possession and dominion were open and notorious to every one, and there is no pretense, that either the elder Nelson or any one who claims under him, was not fully apprised of the circumstances. There is no evidence which indicates that the possession of the defendant was not wholly exclusive during the lifetime

of the elder Nelson, nor during the lifetime of Hayden
Nelson, the father of appellants, nor until 1901 or 1902
and in 1906 and in 1911, when certain interrup-
tions are claimed to have been made by the
plaintiffs, which will be hereafter discussed. A
hostile or adverse possession of lands by a claim-
ant is holding them with the intention of taking
and holding them as his, to the exclusion of all others.
This intention, of course, can be gathered only from acts
and declarations of the claimant, while in possession and
the circumstances attending his entry and occupation.
Where one takes actual and exclusive possession of
lands, claiming them as his own, and with the intention
to hold them exclusively as his, and does so with notice
to the title holder, or when his acts of possession are
so open and notorious that they give notice generally of
his intention and purposes, the statute of limitation is
set to running in his favor, and if permitted to continue
for the statutory period a title in him to the lands will
ripen, unless the circumstances of his holding are such,
that he is estopped to claim the land as against the legal
title holder. The bare actual possession alone of a tract
of land would be no evidence of an adverse holding,
however, because one in possession of land is always
presumed to be holding it, in subservience to the holder
of the legal title. To prove the adverse character of the
holding, the defendants offered several witnesses who
deposed to the fact of the exclusve control exercised over
it by Moses Johnson, and the appropriation of the profits
to his own use and to the fact, that when he cultivated
other lands upon the farm he paid rent therefor, while
he did not pay rent for the use of the lands upon the
tract in controversy. It was, also, proven by several
witnesses, the declarations of the elder Nelson, to the
effect, that, when referring to the land in controversy,
he always spoke of it as the defendant, Moses Johnson's
land, and one witness testified that Johnson in his pres-
ence, inquired of Nelson, the elder, "if he had ever taken
that paper about his land to Independence," the place
of recording, and that Nelson replied that he had neg-
lected to do it, but would do so. Another witness de-
posed that he inquired of the elder Nelson as to the de-
fendant's authority to rent the land, and was told by
him that he had given the land to the defendant and the
latter could do as he chose with it. Fred Johnson de-
posed that in the presence of the plaintiff, Thomas H.

Nelson, the elder Nelson said to him that he ought to stay at home and assist his father, that he had given his father the land and that "they" ought to think enough of it to take care of it. The defendants further testified to the effect that in the presence and hearing of the plaintiff, Thomas H. Nelson, in the year 1888 or 1889, the elder Nelson came to the land in controversy, and said to the defendant, Moses Johnson, that he had come to show him the boundaries of his land, and thereupon proceeded to go over the land and point out to defendant the lines and corners of the land, and this was the last occasion upon which the elder Nelson was ever upon the land. The boundary designated by the elder Nelson, as the tract which he had given to the defendant, Moses Johnson, was, according to the evidence for defendants, surrounded by fences upon all sides, and comprised sixty to seventy acres, and according to the evidence for plaintiffs, was surrounded by fences upon three sides, but upon the line between the land in controversy and Nelson's other lands there was no fence, and the line was unmarked, or at least there is no fence now there, after a period of thirty years. This evidence does not prove that there was no fence there when the line was designated, but an inference may be drawn from the evidence of plaintiffs that a fence never existed upon the line claimed by the defendants. Whether it is one way or the other, however, there is no dispute but what the line upon that side was a straight line extending from a stone in the creek at Jones' line to a beech snag at Tippett's corner, and thus the tract of land given to Johnson, was clearly and definitely defined, and if his contention is correct, it was a well defined and marked boundary, as it was marked by the existence of fences. It is a well settled principle that when one is placed in the actual possession of a well defined boundary of land under an unqualified parol gift, the holding thereafter by the donee is presumptively antagonistic and adverse to the title of the donor. Commonwealth v. Gibson, 85 Ky. 666; Ward v. Edge, 100 Ky. 766, Chamberlain v. McKinney, 6 R. 365; Owsley v. Owsley, 117 Ky. 47; Thompson v. Thompson, 93 Ky. 435; Creech v. Abner, 106 Ky. 239; Gilbert v. Kelley, 22 R. 353; Lewis v. Lewis, 5 R. 858; Logan v. Phenix, 23 K. L. R. 2300; Murphy v. Newingham, 151 Ky. 160; Wood on Limitations, p. 539. Under such circumstances, if the donee claims to the extent of a boundary, which is well defined the actual

possession of the entire tract which was donated, is invested in the donee, both the portion which he incloses and cultivates, and also the remainder of the land, by construction, as he is not a trespasser whose possession is defined by his close, and there is no contest between his actual possession, by construction, of the portion of the lands which he does not actually take possession of by inclosure or cultivation, and the constructive possession of the donor, although the donor lives upon adjoining lands, since the donor by his gift and delivery of the possession, abandons any possession which he may have had and actual possession by construction is a creature of intention. It is true, as contended by plaintiffs, that the general rule is that one entering upon lands without color of title has no actual possession further than he asserts possession by inclosure or cultivation, or unless he has and claims to a well defined marked boundary, and the reason for this principle is based upon the fact that a deed, patent or bond for title, although it does not invest the claimant with a valid title, but only an appearance of title, if he enters under it, and claims title under it to the extent of the boundaries described in it, it serves as a notice to the true owner of the extent of the occupant's claim and removes the danger of destroying the title of the true owner, when he has no means of knowledge that any one is contemplating an encroachment upon him, and in the absence of such a writing, a well defined marked boundary to which an occupant claims, serves the purpose of notice to the true owner, as well as other persons of the extent of the claim of one who is occupying some portion of the tract and claims to the well defined marked boundary. Another reason for the rule is that the constructive possession of lands is always in the holder of the legal title, where they are not in the actual possession of another, and there could not be two persons in the constructive possession at the same time. While this court has never determined the exact question as to whether or not a writing is in every instance necessary to create color of title, and thus authorize actual possession by construction, it holds that a well defined marked boundary to which an occupant claims, gives actual possession, by construction, to an occupant of the lands, who claims to such boundary and where there is no actual possession of the land and no possession under a superior overlapping title paper is interfered with,

and in cases of a parol gift as between donor and donee, and persons claiming under them, other than purchasers for value, that a well defined boundary will give to the donee the actual possession, where he is in possession of a part claiming to such boundary, and will set the statutes of limitation to running. When a donor makes an unqualified gift of land to a well defined boundary and puts and intends to put the donee in actual possession, he thereby necessarily abandons any possession which he has and has full knowledge of the donee's claim. Normant v. Eureka Company, 98 Ala. 181; Tennessee Coal Co. v. Linn, 123 Ala. 134; Bell v. Denson, 56 Ala. 444; Hawkins v. Hudson, 45 Ala. 482. In the instant case the boundary of the land embraced by the gift was not well defined, or so far as the evidence indicates was not defined at all, until the elder Nelson designated the boundaries to Johnson by pointing them out, on the ground, in 1888 or 1889, but, if at that time, Johnson claimed the ownership of the lands to such boundary, he began to hold all the lands included in the boundary, adversely, and the statutes began to run in his favor, whether or not they were inclosed or cultivated, as he actually resided on the land; but, if the gift had been made previous to that time, as the evidence indicates, and the boundary not well defined, Johnson up to the time the boundaries were so defined was not holding any of the lands within it adversely to the donor, except such portions as he had reduced to his actual possession by inclosure or cultivation. The evidence for defendants was ample to require a submission of the action, under proper instructions, to the jury.

The instruction of the court, which limited Johnson's right to hold the land by adverse possession to fifteen consecutive years, next preceding the institution of the action, was error, as any fifteen consecutive years of adverse possession after the gift was made, and after the statute was set in motion as above stated, would create title in him. Sanders v. Barbee, 8 K. L. R. 773. Up to the time to which the evidence indicates that a gift had been made of the land to Johnson, the presumption is, in the absence of any explanation, that he was holding the land in subservience to the title of the elder Nelson, as a bare possession, though actual, is presumed to be a holding amicable to the legal title. The second instruction given by the court defining adverse possession was, also, erroneous, as a mere claim of possession, and in

fact having possession would not create title in the defendants. An essential element to create title by adverse possession is an assertion by the occupant of the purpose to hold the lands as his own, exclusive of the donor, as well as others, but to support such a claim it is not necessary that the claimant should make an express declaration to that effect, but his acts and conduct at least, must be such as will clearly indicate a claim of ownership.

The plaintiffs offered evidence which conduced to prove that the lands were not a gift to the defendant, Johnson, and that he resided thereon and used them to the extent he did by the permission of the elder Nelson and his successor in title, and never set up any claim of right in himself until in the year 1911, and thus the lands were at all time in the possession of plaintiffs and their predecessors. They, also, gave evidence which conduced to prove that in the year 1905 or 1906, and probably at an earlier period, the plaintiffs entered upon the lands, within the boundary in controversy and rented out to tenants and caused to be cultivated certain portions of the lands, for different years. They gave evidence to the effect that they had entered upon about fifteen acres of the lands, which Johnson claimed had been given to him by the elder Nelson, but which he does not now claim and which is not in the boundary in controversy and took possession of same and used and controlled same ever since, and that they did this with the intention of taking possession of the entire tract. The defendant, Johnson, claims that the plaintiffs entered and took possession of this portion of the land by his permission and in consideration of an agreement between him and them, that the plaintiffs would pay the taxes upon the lands claimed by Johnson. Another portion of the land which plaintiffs entered upon and cultivated for one year or more, Johnson claims was done by his permission, and upon an understanding, that, it should be cultivated by plaintiffs for only one year, and that he resumed possession of it thereafter and held it since. Johnson denies that plaintiffs entered upon or cultivated other portions which they claim to have done. The plaintiffs, also, gave evidence to the effect that in 1906, they cut timber trees from the lands, and that in 1911 one of the plaintiffs, with the knowledge of Johnson, entered upon the lands and carried away a portion of a corn crop which Johnson had grown thereon. The plaintiffs offered an instruc-

tion based upon these alleged entries which the court properly refused to give, because it was defective in substance, but it was such as required the court to give a correct instruction upon the subject. The running of the statute of limitations in favor of one who is in the adverse possession of lands, but has not been in such possession the statutory period necessary to create title, will be arrested or tolled by the entry of the owner when he accompanies his entry with an express declaration of his purpose to repossess himself of the lands, or by such notorious acts of dominion as make that purpose manifest. Trotter v. Cassady, 3 A. K. M. 365, 1 R. C. L. 3940. Although such an entry may cause a state of mixed possession to arise, the law vests the entire possession in the owner, as it then ceases to be exclusive in the occupant and claimant, and the statute is arrested. A parol gift of lands, not creating any title under the statute of frauds, is subject to re-entry by the donor or his representatives who are the holders of the legal title. If the entry is made by the owner, without intention to take the possession, or unaccompanied by an express declaration to that effect, or by such acts as notoriously manifest that purpose, it does not arrest the statute, and hence if the portion of the lands entered upon by the plaintiffs and cultivated, had already become the property of defendant through an adverse holding for the statutory period, or if the statutory period had not yet expired, if entered upon by the permission of Johnson, as he claims, for the purpose of the cultivation of one crop and then returning it to him, the possession all the time thus remaining in him, or if the entry was made under an agreement to take a portion of the land and pay the taxes on the whole, the statute of limitations as to the remainder of the land was not arrested, nor was defendant's possession as to the remainder disturbed. If an entry was made by the plaintiffs, with an express declaration of intention to repossess themselves of the land, and was made upon a portion of the lands, the title to which had ripened in Johnson by adverse possession, the entry would be entirely without effect, but, if made upon a portion of the land, to which the title had not already ripened in Johnson, with the purpose to repossess themselves of the whole land, accompanied with an express declaration to that effect, or by such acts as notoriously manifested that purpose, it would have the effect of arresting the running of the statute of limita-

tions as to all of the lands within the boundary to which the title by adverse possession had not already ripened in Johnson. The court, however, should direct the jury that the cutting of trees upon the land in 1906 of itself did not disturb the possession of Johnson, nor arrest the running of the statute, as it has been consistently held that an occasional entry on land and using timber will not of itself be sufficient to oust an adverse possession. Young v. Withers, 8 Dana 165; McDowell v. Kinney, 3 J. J. M. 516; Smith v. Mitchell, 1 A. K. M. 207; Braxdall v. Speed, 1 Mar. 105; Humphrey v. Jones, 3 Mon. 361; Swafford v. Herd, 65 S. W. 803; 2 C. J. 97. The same fate should overtake the evidence of the entry of one of the plaintiffs, and the taking of the defendant's corn in 1911. The plaintiff admits that the corn was the property of Johnson, alone, and hence his act was simply a forceable trespass upon the defendant and did not have the effect to stop the running of the statute. Ferguson v. Bartholemew, 67 Mo. 212; Cary v. Edmunds, 71 Mo. 523.

For the reasons indicated, the judgment is reversed and cause remanded for proceedings not inconsistent with this opinion.