## McCoy et al. v. Kentucky & West Virginia Gas Co. et al.

January 24, 1950.

E. D. Stephenson, Judge.

58

Auxier, Baird and Hays, for appellants.

Francis L. Rice, Hobson and Scott, and Francis M. Burke, for appellees.

VAN SANT, COMMISSIONER—Reversing.

This litigation was originated by an interpleader petition filed by the Kentucky and West Virginia Gas Company, Inc., under and pursuant to an oil and gas lease executed to its assignor, B. M. James, as lessee, by P. P. McCoy and his wife, Sarah, dated July 8, 1926. The lease was duly acknowledged and recorded, and covers a tract of land referred to as the Pond Branch farm in Pike County containing 200 acres more or less, situated on the Pond Branch of Brushy Creek, near where the latter empties into John's Creek.

P. P. McCoy, who died in January, 1938, had six children: Harlow W. McCoy, W. R. McCoy, Cornwallis McCoy, Hayes McCoy, George W. McCoy, and Rebecca A. (Lana) Blackburn, five of whom survived him, Harlow having died November 5, 1931. Harlow was survived by his widow, Mousie, and five children; Lyda McCoy Runyon, Hazel McCoy Schuler, Sallie McCoy Scalf, Henry P. McCoy, and Joe McCoy. Joe executed and delivered a deed to his wife, Maggie, and their children, Irene, Sydney, Joeavell, and Iona, conveying his interest in the real and personal property of his father's estate without description except reference to records in the office of the County Court Clerk.

The parties to this action (excepting the Kentucky

and West Virginia Gas Company) are claiming the title to the Pond Branch farm in opposition to each other. The widow and descendants of Harlow McCoy claim under an alleged parol purchase and perfection of title by adverse possession, which claim was set up by cross-petition. The widow, Mousie McCoy, died during the pendency of the action, which was revived as to her in the name of L. D. May, administrator of her estate. The other four sons of P. P. McCoy; viz., W. R. McCoy, Cornwallis McCoy, Hayes McCoy and George W. McCoy, claim under a recorded deed executed by their father on November 28, 1933, which claim is also set up by cross-petition. Cornwallis McCoy deid during the pendency of the action, which was revived as to him in the name of his widow and children. The widow and descendants of Harlow McCoy, who are appellees, claim that the deed of November 28, 1933, from P. P. McCoy to the four brothers is void as champertous and because of undue influence and lack of capacity to execute the deed.

After the taking of voluminous testimony, the case was submitted to the court, which adjudged that Harlow McCoy had purchased the property by parol and had perfected his title thereto by fifteen years adverse possession; that the deed of 1933 was champertous and, to that extent only, void; that the title to the land in question was in the children of Harlow and Mousie McCoy, and Maggie McCoy (wife of Joe McCoy) and her children; and that they are entitled to the accrued rents and royalties in proportion to their respective interests. To this judgment W. R. McCoy, Hayes McCoy, George W. McCoy, and the widow and children of Cornwallis McCoy excepted, and from it they have appealed to this Court.

The testimony for both parties is extensive and conflicting, but the following facts may be said to have been established. Harlow McCoy lived on the land in question for several years prior to 1915, when the alleged parol contract was made whereby Harlow allegedly purchased the Pond Branch farm. Appellees (excepting Kentucky and West Virginia Gas Company) claim that this purchase was completed in March 1916, after Harlow had finished making certain payments for his father on the purchase price of another farm in

Lawrence County, and which payments were the consideration for the parol purchase of the Pond Branch farm. They additionally claim that from this date until Harlow's death on November 5, 1931, the latter was in continuous, peaceable, exclusive, notorious, and adverse possession.

On July 28, 1926, P. P. McCoy executed to B. M. James the oil and gas lease aforementioned on the property in question after the latter had completed negotiations therefor with Harlow. The written lease was not signed by Harlow, nor was his name mentioned therein. From 1926 until the time of his death in 1938, P. P. McCoy, pursuant to the terms of the lease, received all delay rentals under the lease, no royalties having been paid because there was no development of the oil and gas until 1943. Appellants introduced in evidence a carbon copy of a lease dated January 1, 1932, signed by P. P. McCoy leasing the Pond Branch farm to Mousie McCoy, and the evidence shows that Mousie signed the original.

It further was shown that Harlow and, after his death, Mousie McCoy paid taxes on the Pond Branch farm. Their heirs point to this fact as exercise of claim of ownership of the property; however, the lease from P. P. McCoy to Mousie, executed January 1, 1932, recites the payment of these taxes to have been part consideration for the right of Harlow and Mousie to use the property as tenants for that period of time. Considerable evidence was introduced to show that P. P. McCoy referred to the land on occasion as ''Harlow's farm.'' The evidence conclusively shows that Harlow, until the execution of the lease in 1926, exercised control over the farm, worked various parts of it, maintained the buildings, repaired the fences, and leased portions of it to tenant farmers, although neither he nor his family lived on the farm for more than two years after the year 1916.

We need not detail all the evidence since we find that the decision of the Chancellor must be reversed, because the uncontradicted facts necessarily lead to the conclusion that the continuity of hostile and exclusive possession is lacking for the period of time necessary to ripen title in the adverse claimants. We think that the lease of 1926 to B. M. James by P. P. McCoy ar-

rested the hostility of the possession of Harlow McCoy under the facts of the case. It is conclusively shown that Harlow and Mousie McCoy knew of this lease; in fact, Harlow negotiated it for his father. By the terms of the lease all royalties and rentals were payable to the father without limitations as to time, despite appellee's contention that such payments were to be for life only. Alhough B. M. James testified that P. P. McCoy had told him the farm was Harlow's, we cannot ignore the fact that Harlow did not sign the lease, and that he was not mentioned in or made a party to it. It seems unlikely that James would have accepted the lease in that form, had he been told the farm belonged to Harlow. But irrespective of whether or not James was told the farm belonged to Harlow at the time of the execution of the lease, the fact remains, and appellees admit, Harlow's claim had not then ripened into title.

We think that Harlow's prompting and aiding in the execution of the lease was an unequivocal act by which he recognized the title of his father. Such a recognition, even for an instant, clearly interrupted the hostility of the possession of Harlow. Furthermore, after the execution of this lease, Harlow and his heirs were no longer in exclusive possession. B. M. James and later the Kentucky and West Virginia Gas Company were in possession under the lease, and there is no showing of ouster of them. In short, although appellees deny P. P. McCoy's title in their cross-petition, they actually acknowledge it in claiming the royalties due under the lease. From the time of the execution of the lease they have recognized the right of the lessee to the possession of the property under the authority of the person against whom they now claim to have been holding adversely. One may not hold amicably to a lessee and adversely to the lessee's lessor, because the possession of the lessee is that of the lessor.

In Nelson v. Johnson, 189 Ky. 815, 226 S. W. 94, 100, the court said: "The running of the statute of limitations in favor of one who is in the adverse possession of lands, but has not been in such possession the statutory period necessary to create title, will be arrested or tolled by the entry of the owner when he accompanies his entry with an express declaration of his purpose to repossess himself of the lands, or by such notorious

acts of dominion as makes that purpose manifest. Trotter v. Cassady, 3 A. K. Marsh. 365, 13 Am. Dec. 183; 1 R. C. L. 39, 40. Although such an entry may cause a state of mixed possession to arise, the law vests the entire possession in the owner, as it then ceases to be exclusive in the occupant and claimant, and the statute is arrested. A parol gift of lands, not creating any title under the statute of frauds, is subject to re-entry by the donor or his representatives who are the holders of the legal title."

No such exclusive possession as would have ripened into title can be found here. We therefore conclude the Chancellor erred in declaring appellees to be the owners of the property under their claim of adverse possession.

The contention that the deed of November, 1933, is champertous and void must fall with the lack of exclusive possession. In order for the possession of a stranger to the record title to be such as to render a deed to a third party by the record owner void, the holding must be one that can ripen into title. No such holding was present here since P. P. McCoy had a tenant in possession in the Kentucky and West Virginia Gas Company.

As we heretofore have noted, the sole reason assigned by the Chancellor for declaring the deed of 1933 to be void was that it is champertous. This was a finding against appellees as to their contention that, at the time of the execution of the deed, P. P. McCoy was of unsound mind or was the victim of undue influence. No cross-appeal has been taken by appellees from that determination.

The judgment is reversed with directions that another be entered dismissing the cross-petition of the heirs of Harlow and Mousie McCoy, and declaring the grantees named in the deed of 1933, and their heirs, to be the owners and entitled to the rentals and royalties in question, as their respective interests may appear.