## White, et al. v. Philpot.

(Decided October 25, 1927.)

### Appeal from Monroe Circuit Court.

1. Quieting Title.—Where plaintiff did not claim to be in possession of interference and showed no equitable ground of canceling defendant's title papers, defendant making no affirmative defense, there was no ground for suit to quiet title.

2. Ejectment.—In suit to recover strip between defendant's and plaintiff's lots and to quiet title, where plaintiff did not claim to be in

possession of interference and showed no equitable ground for canceling defendant's title papers, and defendant made no affirmative defense, there was no ground for suit to quiet title, and action had to be regarded as one in ejectment.

3. Boundaries.—In action in ejectment to recover strip of land between defendant's and plaintiff's lots, plaintiff could not prove his title or establish his corner by showing that disputed land was not embraced within defendant's deed.

5. Boundaries.—In suit to recover strip of land between plaintiff's and defendant's lots, evidence held not to establish any of plaintiff's corners with certainty.

6. Boundaries.—Though distance called for in deed gives weight to natural object where called for and established as corner, where there was call for stone corner but none existed, plaintiff in ejectment could not go beyond call of 66 feet in deed.

7. Appeal and Error.—In action in equity to recover strip adjoining plaintiff's lot, where if issue had been tried at law defendants would have been entitled to peremptory instruction, judgment for plaintiff could not be regarded as verdict of properly instructed jury.

8. Appeal and Error.—In trial of ordinary actions tried in equity upon proof taken by deposition, judgment of chancellor is given same weight as in other equitable actions.

B. F. DENHAM, J. M. JACKSON and SAM ROBINSON for appellants.

V. H. BAIRD for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

The parties to this action own adjoining lots fronting on Mill street and running back to Crawford street in the town of Tompkinsville; each has a residence facing Mill street in which he lives, these residences being but a few feet apart. About the year 1914 the parties constructed a partnership fence between their properties. This was reconstructed by White in 1921, and Philpot claims that it included a strip of land 15 inches wide at Mill street and running back to a point at the other end of the White lot. To recover this land and damages for its detention he filed an action in equity, also seeking to quiet his title. The defendants White and wife answered, traversing the allegation of the petition, and pleaded title, but asked no affirmative relief by counterclaim or otherwise. The case proceeded in equity, and from a judgment for plaintiff defendant appeals. The proof

will be better understood by a reference to the following plat:

Appellant's lot abuts on Third street with his residence facing on Mill street and his barn facing on Crawford street. It includes a part of the latter street, embraces lots 6 and 7 of the town plat of Tompkinsville, and forms a rectangular block 66x280 feet. None of his corners are clearly established, but they may be roughly identified as being at or near A, B, C, D. Appellee's lot is adjacent thereto and faces 185 feet on Mill street and either 180½ or 185 feet on Crawford street. None of his corners are established, but they may be said to be at or near the letters B, C, F, E and to include a part of lots 8, 5, 253, and 254 on the town plat; the disputed land being embraced within the lines B, C, I, B. Mill and Crawford streets extend northeast of the defendants' property to the city limits, as do lots 253 and 254 on the original map without any other street intersection. In November, 1891, R. H. Martin and others conveyed lots 6 and 7 to Philpot without any other description and put him in possession, and it appears that in a number of prior conveyances this property had been described in the same way. On the advice of an attorney, Philpot had his lot surveyed and undertook to locate the lines with the aid of the adjoining property owners, to wit, Emerson Leslie, who owned lot No. 5, and W. H. Glazebrook, who owned lot No. 8. A corner was established at or near the letter C, a stone with a cherry tree pointer. It was also

agreed that a stone at or near the letter H was a corner to 5 and 8 and in Philpot's line. The surveyor began at C and ran with the original calls S. 33° W. 66 feet, calling for a stone at Third street; thence with Third street N. 57° W. 280 feet to a stone at Mill street; thence N 33° E. 66 feet to a stone; thence a straight line to the beginning. However, no stones were found or placed except at or near the letter C. A second deed was made by Philpot's vendors in accordance with this description and which he accepted and had recorded. Philpot was already in possession of the property, and has lived on it continuously since that date, and had acquired possessory title to the extent of his boundary lines as well as to his actual inclosures before the year 1909. At that time Glazebrook, who had purchased lot No. 5 from Leslie, conveyed White the lots on the plat marked defendants' lots according to the following description: Beginning at the west corner of lot No. 8; thence with the street N. E. 185 feet to a stone in the line of said street; thence parallel with the lots 8, 5, to a stone in the line of Crawford street 264 feet; thence with the line of said street 180½ feet to a stone 4½ feet from a corner of lot No. 5; thence to the beginning.''

On the 21st of May, 1924, and after this suit had been filed, the heirs at law of W. H. Glazebrook quitclaimed to the defendants a strip of land 4½ feet on Crawford street described thus:

"Beginning on Mill street, J. A. White and Bud Philpot with Philpot's line 264 feet to Philpot's corner on Crawford street; thence with Crawford street 4½ feet to White's line; thence to the beginning.''

This triangular space facing 4½ feet on Crawford street extending to a point on Mill street would make defendant's lines uniform, but has little bearing on this action. After the completion of the issues in this suit, the parties selected two competent surveyors to take their title papers, and without suggestion from any one to survey the lots of each, one of whom made the survey for Philpot in 1891. However, at this time they apparently made no effort to locate the corner at C (a matter now in dispute) or the stone at H, but undertook to establish the survey by the lines of the streets. This they were unable to do, as it does not appear that any of the streets of Tompkinsville have established corners. Fail-

ing in this, they went to a point at G which is established
as a corner to J. E. Leslie and W. D. White (not defend-
ant), said to be 13 feet northeast of defendant's lot, and
after measuring 13 feet to a point at letter E which they
fixed as defendant's corner, they ran with Mill street 185
feet, stopping 15 inches short of White's fence, and fixed
this as his corner at the letter I and ran from this to the
cherry tree at C, and continuing the calls to F and E, re-
ported this as the boundaries of defendant's lots. They
then ran appellee's lot from I to C to D to A and to I,
leaving the triangular space between B and I back to
their meeting point included in appellee's lot. It appears
from the evidence of these surveyors that Third and
Mill streets are old established streets of the town, and
that in one survey they located the eastern intersection
of these streets at a point 5 feet from the southwestern
corner of plaintiff's residence. However, there is no
certainty as to this. They further testify that plaintiff's
residence faced 65 feet on Mill street. The corner I as
established by them is over 3 feet northeast of the corner
of his residence, and if the line of Third street is 5 feet
from the other end of the residence, this would give his
lot a frontage of 74 feet. If the corner of his lot and the
intersection of Mill and Crawford streets is at his resi-
dence corner, he has a frontage of over 67 feet to the lat-
tice fence and 69 feet to the letter I, the corner fixed by
them. The evidence also shows that formerly a fence
ran along Mill street in front of defendant's property
and joined to a post which stood within a short distance
of the northeast corner of plaintiff's residence, and the
space between it and the residence was covered by a
single upright plank less than a foot in width. There was
no fence between the lots at this place, but a fence did
extend from the rear corner of his residence to the smoke-
house, marked "X," the sides of the house forming a
part thereof, and it was extended from the rear corner
of his smokehouse to his barn. In 1914 defendant and
plaintiff constructed a plank fence from Mill street a por-
tion of the way along the line between them, and erected
a wire fence from there on; defendant paying the cost of
the plank fence and plaintiff of the wire fence. No ob-
jection was made at that time to its location. In 1920
the front part of this fence was reconstructed out of lat-
tice by the defendant, it being testified by several wit-
nesses that it was placed on the same line as the former

one, while plaintiff claims it was placed over toward his residence. There is also proof by plaintiff that the sills of his house had rotted, and that in replacing these he graded the land claimed by defendant. While, on the other hand, defendants prove by several witnesses that in grading their lot they came up to within a foot of plaintiff's residence. There is also considerable conflict in the evidence as to the location of the corner C. Defendants claim that the stone at the cherry tree pointer is in the plaintiff's lot at the back of his barn; that the barn is 3½ feet on the Glazebrook lot, and for that reason Glazebrook did not convey all of lot No. 5 with covenant of general warranty; and that afterward a quitclaim deed to this interference was made. The cherry tree is near the corner of the barn, and plaintiff's proof conduces to show that the stone is in the line, a foot northeast from the corner of the barn; none of these facts being clearly established. The stone at H is not called for in any of the deeds, and as neither the corner at B or C is established, it has but little bearing.

In applying these facts to the legal issues, it will be observed that as plaintiff does not claim to be in possession of the interference and shows no equitable ground of canceling defendants' title papers and the latter make no affirmative defense, there is no ground for a suit to quiet title (Newsome v. Hamilton, 142 Ky. 5, 133 S. W. 952; Cumberland Co. v. Kelly, 156 Ky. 397, 160 S. W. 1077); hence the action is to be regarded as one in ejectment, in which the plaintiff must rely on the strength of his own title. While he does not trace paper title to the commonwealth, he has a good possessory title to the extent of his deed as well as to the inclosures held by him for the statutory period, but the burden remains upon him to locate his boundaries or to show such inclosures and to show that the disputed land is embraced therein. He cannot prove his title or establish his corner by showing that the disputed land is not embraced within White's deed. While this might have an indirect bearing as secondary evidence, it fails as substantive proof. Looking alone at his title, it will be noted that not a single one of his corners is established with certainty. The surveyor has been unable to locate the street lines. The town plat shows that, with the exception of 253 and 254 and a few others, the uniform size of the town lots was 66 by 132 feet, and his deed calls for no more except as it encroached upon

Crawford street. While the surveyor in 1891 was unable to locate the street lines, it is evident that in establishing appellee's second corner at D Third street was reached.

It is at least fair to assume that the street intersection and corner at A was fixed outside plaintiff's residence, so that if the southwest corner of the front line of his residence should be accepted as the corner of his lot, the call 66 feet gives out one foot beyond his residence and does not reach defendants' fence. Of course, this distance would give way to a natural object if called for and established as a corner, but while there is a call for a stone corner at that place none exists; hence he cannot go beyond the calls of his deed, and if the issue had been tried at law defendants would have been entitled to a peremptory instruction, so that the judgment cannot be regarded as the verdict of a properly instructed jury. Indeed, in the trial of ordinary actions tried in equity upon proof taken by deposition, the judgment of the chancellor is only given the same weight as in other equitable actions. Northup v. Sumner, 132 Ky. 166, 116 S. W. 699.

It is immaterial in this case as to which rule of practice is followed, as in either event the judgment must be reversed, with instructions to enter judgment dismissing the petition, which is now accordingly done.