# Jones et al. v. O'Connell et al.

(Decided February 3, 1931.)

STEPHENS & STEELY and STEELY & FEATHER for appellants.

J. J. TYE for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

This action was instituted by James O'Connell and Sallie O'Connell to quiet their title to a certain lot situated on Masters street, in the city of Corbin, against Curtis Jones. Subsequently an amended petition was filed making Cecil Jones a defendant. The Joneses in answer traversed the petition and set up title to an adjoining lot. They assert title to a portion of appellees' lot in dispute, which is an obtuse triangle, the altitude of which is 16 feet on the back of appellee's lot, with the base 200 feet, extending to a point on Masters street.

J. C. Steele conveyed the lot to which appellees assert title to C. F. Weaver and wife, who in turn conveyed it

on the 7th day of June, 1920, to appellees. This deed was recorded the day it was executed, in the county clerk's office. J. C. Steele deeded the lot to which appellants assert title to Minnie Steele on the 2d day of January, 1924. Minnie Steele and J. C. Steele, on October 5, 1926, deeded it to the appellants Carroll. On the 26th of September, 1928, the Carrolls conveyed it to the appellants Curtis Jones and Cecil Jones. On January 8, 1929, the Joneses conveyed it to appellants S. H. and Lucy Gilbert. The appellees' lot is a rectangle, or, in geometry, designated a rectangular parallelogram. It is described in their deed as "containing 50x200 feet and bounded as follows: Being part of Lot No. 30, adjoining the lot of William Helton, deceased, fronting on the north side of Masters street and running back 200 feet."

At the time appellees accepted the deed to their lot, it was vacant. Within one year from its date they erected a house on it, moved into it, and have occupied it as their home continuously since. In the rear of it, with posts and wire, they built on the back of the lot, a chicken yard, extending from the Helton line, 50 feet in length and some 12 or 15 feet in width, to a point where they claim their line runs with that of appellants. They used this chicken lot for the purpose for which it was built. Immediately beyond it, and toward their residence, they used a portion of their lot for a garden. They planted posts and some shrubbery, roses, and a plum tree, in their line from the corner of the chicken lot, with the line between their lot and that of appellants, for some distance. They planted a hedge on the front, beginning at the Helton corner on Masters street and extending across the entire front of the lot 50 feet. The line between the lot of the Heltons and the appellees is shown to be along the line of an old fence. The line between the Heltons' and appellees' lot is not disputed.

This action was filed on the 8th day of November, 1928. Thus it appears that the Gilberts are lis pendens purchasers of the lot to which they assert title. Being such, their purchase and acceptance of the deed did not affect the rights of the appellees, or change, alter, or enlarge, as against them, the defenses of their immediate vendors who were parties to the action at the time. Chile's et al. v. Conley's Heirs, 9 Dana, 385; Continental Realty Co. v. Cardwell, 171 Ky. 644, 188 S. W. 777;

Roberts v. Cardwell, 154 Ky. 483, 157 S. W. 711, Ann. Cas. 1915C, 515.

The rights and the defenses of the Gilberts must be measured and determined according to the facts existing and proven to exist at the date of their immediate vendor's deeds and the law applicable thereto.

The court rendered judgment, adjudging the O'Connells to be the owners of the disputed strip of land. Appellants appeal from this judgment. A consideration of two questions is necessary to determine this case, viz. (1) Were the appellees in open, actual, adverse possession of the lot to which they assert title, at the time of the execution of and delivery to, and acceptance by, the appellants Carroll and Joneses of their respective deeds? (2) Did the paper title and the actual adverse possession of appellees include the triangle in dispute at the time?

A statement of the evidence is necessary to answer these questions properly and correctly. A great deal of testimony was taken tending to show the boundaries and the possession of the property prior to the execution and delivery of the deeds under which both parties now assert title to the disputed triangle. Many witnesses were asked if they knew where the lines run and if they knew to whose land the disputed portion belonged. The appellees, James O'Connell, and others testify that he occupied the residence; that he built a chicken fence, planted posts and shrubbery, and actually resided on and used this lot from the date of his deed, continuously, to the filing of this action. The old man was so earnest in his assertion of his ownership of a lot 50x100 feet in dimensions that, when his right to claim his lot 50x200 feet was disputed by the appellants, he even insisted that his lot, in that event, included enough of the Helton lot to make his lot 50x200 feet.

The appellants, J. E. Carroll and Curt Jones, in their testimony admit that the O'Connells were occupying the residence and in possession of their lot at the date of their respective deeds, claiming the lot to be 50x200 feet.

The appellant, J. E. Carroll, states that he was familiar with both lots; that there was a post or two back there at the time he bought; that the O'Connells had the chicken lot fenced at that time, which "just came along the line;" that it was built by the O'Connells. In refer-

ring to the chicken lot fence, he says, "It was this much like over on my lot." He says that he saw "Weaver's deed to the O'Connells" before he accepted the deed to his lot; that he remembers the dimensions without referring to the deed as "50 feet front 200 feet back."

The appellant, Curtis Jones, says that at time he received his deed "there were two or three posts there in the back." He paid no attention to them; that he thought they were down on the late he purchased. The posts did not extend "up there on the back over 15 or 20 feet;" that "the chicken lot was back up toward the front 12 or 15 feet;" that there was "30 feet marked off by posts and the chicken lot fence together;" that there "were some shrubbery, rose bushes and I don't know what else right in the line." When he was asked if the shrubbery if 50 feet and the posts and chicken lot 30 feet, making 80 feet of the shrubbery, chicken lot, and posts along the line at the time he received his deed, his response was, "They are in the right place. The shrubbery is." When asked about the plum tree, his response was "Might be one there now, if it was over there I never noticed it."

The chancellor did not deliver a written opinion. The record does not disclose his views of the facts or of the applicable law of the case. While it is a settled rule of this court to give to the chancellor's finding of fact great weight, and when the mind is left in doubt to concur in his findings therein. The admissions of J. E. Carroll and Curtis Jones of their knowledge of the title and possession of appellees and the extent of that possession, coupled with the testimony of James O'Connell and others, we are convinced, are sufficient proof to establish that, at the date of the execution and delivery to, and acceptance by, the appellants, Carroll and Joneses, the appellees had that type and character of open, actual, and adverse possession of the disputed portion of the lot embraced in deed of appellees as to render the deeds of Carrolls and Joneses champertous and void. Brown v. Wallace (Ky.) 116 S. W. 763; Pioneer Coal Company v. Asher, 226 Ky. 488, 11 S. W. (2d) 116; Ratliff v. Sowards, Guardian, 152 Ky. 97, 153 S. W. 25.

It cannot be doubted that by a correct and accurate survey of the lots of both parties the disputed land is within the boundaries contained in both of their deeds. It is shown that J. C. Steele at one time owned both lots.

The title of both appellees and appellants was derived by deeds from him as their prior vendor. Hence it was not required of appellees to trace their title back to the commonwealth. White v. Philpot, 221 Ky. 529, 299 S. W. 173. But the burden of proof rested upon appellees to show their title back to a common grantor, and to show their possession, and the extent and character thereof. White v. Philpot, supra.

In Nelson v. Johnson, 189 Ky. 821, 226 S. W. 94, 97 we said:

> "An 'actual possession' is such possession as in general terms indicates an exclusive ownership of the property, and this is usually shown by a residence thereon, an inclosure of at least a portion of the lands, or their cultivation, or at least in every instance such use of the land as is practicable, and for the purposes for which such character of lands are ordinarily used. . . . Where one takes actual and exclusive possession of lands, claiming them as his own and with the intention to hold them exclusively as his, and does so with notice to the title holder, or when his acts of possession are so open and notorious that they give notice generally of his intention and purposes. . . . "

There is no plea of champerty, but the evidence shows that appellants entered upon the disputed land and moved a building thereon without the consent of appellees. In action for trespass, or where a deed is obtained, and the land thereby conveyed, at the date of such deed, is in the actual, adverse, and open possession of another, it is not necessary to plead champerty. It may be relied on if the evidence establishes it without a special plea. Keaton v. Sublett, 109 Ky. 106, 58 S. W. 528, 22 Ky. Law Rep. 631; Kentina-Puckett Corporation v. Simpson, 196 Ky. 246, 244 S. W. 699. A deed so obtained is champertous and void. Kentina-Puckett Corporation v. Simpson, supra.

It satisfactorily appears from a preponderance of the evidence that appellees had the actual, open, and adverse possession of the disputed triangle of land at the time the appellants, Carroll and Joneses, accepted deeds to their lot. For this reason, their respective deeds

are brought within the statute against champerty and maintenance.

Wherefore the judgment is affirmed.