## Howard v. Howard et al.

(Decided April 28, 1931.)

534

D. M. LEE for appellant.

J. B. SNYDER and H. H. FUSON for appellees.

Opinion of the Court by Judge Richardson—Affirming.

This is an action of ejectment instituted by appellant as plaintiff against the appellees, as defendants. It was tried by a jury. A verdict was returned for appellees on which the judgment was entered. From it appellant appeals. In his petition, the appellant alleged that he was the owner of two certain lots described in the petition. The one in controversy is described as follows:

"First: That parcel or tract of land lying and being in the city of Harlan, Harlan County, Ky., and more particularly described as follows: A lot in Block 5 J. L. Smith addition to Harlan, beginning at a stone on River Street, at the southeast corner of Lot No. 15; thence running about 75 feet to a stone in River Street on west side of road running down branch (now Cawood street), thence running with west side of said road (now Cawood street) along a rock wall 100 feet; thence west about 100 feet to Lot No. 15; thence south with east side of Lot Number 15 to the place of beginning."

The appellees for answer traversed the petition and alleged they were the owners of three certain lots described as follows:

"Lots Nos. 11, 13 and 15 in Block 5, J. L. Smith Addition to Harlan, Ky.; lots 25 feet front and 100 feet deep, adjoining property of Garrett Howard."

Other pleadings were filed by which the issues were made. The question to be considered and determined is one of fact. J. L. Smith owned a tract of land which he desired to subdivide into town lots as an addition to the city of Harlan. He employed Hall as a surveyor for that purpose. The appellant assisted him and Hall in making the survey. While making it, a proposition was made between them whereby Smith proposed to sell, and the appellant proposed to buy, a certain boundary of land which was being surveyed, for an agreed price. They agreed on the boundary and price. Smith executed and delivered a deed conveying to him the agreed boundary. At the time of the agreement between them, the subdivision had been in part surveyed and staked, but no map of it had been made. Afterwards the surveying of the remainder of the subdivision was completed, and "a map was filed in the county clerk's office of the Johnathan L. Smith Addition to Harlan, revised by Joe McDonald, dated July 1914, surveyed by J. M. Hall." Mr. Smith described in his testimony the status of the survey and subdivision at the time he and appellant entered into the trade, and at the time he executed and delivered to appellant his deed, in response to the following questions:

"Q. Mr. Smith, at the time you contracted the boundary of land referred to, to Garrett Howard that you sold him I believe you state there had not been any of this lotting done or numbering. A. No, hadn't been any plat filed. We did survey there at different times to get my streets located and to get this particular place located. I did do some surveying but I don't think we staked the lots out at that time.

"Q. When you staked off Garrett Howard's boundary to him where did you locate his beginning corner? A. I located it at the east end of this bottom, next to the branch, corner some 75 feet from

536

the branch West at a point where the fence and post is between Garrett Howard and D. H. Howard.

"Q. What did you place there, if anything, to indicate that place? A. I placed a stone.

"Q. Did you make Garrett Howard a deed to what he got? A. Yes sir.

"Q. Do you know what become of that deed? A. He reported to me later, I don't know how much later—some years perhaps later, that he had lost that deed and I made him another deed.

"Q. Now in the meantime, and before you made him another deed, had you deeded off any of these lots this side of him? A. Yes sir."

Only block 5 on River street of the Smith subdivision is directly involved. It is shown by the map of it that it is divided into nine lots, each 25 feet front on River street; eight of them are rectangular parallelograms; and one is a triangle, fronting 25 feet on River street. Numbering them as the appellant insists they should be numbered, beginning with the triangular lot as No. 1, using odd numbers up to 15, the appellant's deed embraces the lot in dispute. Leaving the triangular lot unnumbered, and beginning with the next lot as No. 1, and using odd numbers up to 15, the lot in dispute will be embraced by the appellees' deed. The appellant's lot must be located by its boundary as contained in his deed. It is satisfactorily shown by the evidence that, at the time Smith and wife executed and delivered to appellant the deed to his lot, the survey of the subdivision and the marking of the lots in block 5 and the map thereof had not been made or completed. The deed executed and, delivered to him at that time was not recorded. It was placed in the possession of his father, and, at the time of the burning of his residence, it was destroyed.

On January 4, 1919, in lieu of it, the appellant obtained from Smith and wife a second deed to his lot. The boundary of his lot as hereinbefore given shows that his second deed calls three times for lot 15. No evidence was offered to show, or as tending to show, a description of his lot as given in his first deed, nor to show that it was the same in both deeds. In the preparation and trial of the case, the appellant assumed that the description of his lot as given in the second deed is identical with that given in his first deed. He was asked and answered this question: "Tell the jury whether or not

actual surveying had been done and a map made at the time you bought this lot from Johnathan L. Smith. A. It was staked off. . . . ''

According to his own testimony, the subdivision which was being made by Smith at the time he received his deed had not been so completed as to show the numbers and the map of block 5 as to enable the parties in executing the first deed to call for lot 15 as it is called for in the second deed. About two years after appellant accepted his first deed, he erected a dwelling on his lot. At that time the stakes which had been driven by Smith at the time he made the subdivision had been knocked down, except ''the hub stakes.'' He occupied his residence four or five years before appellees erected their residence on the adjoining lot. During this time, he neither asserted title to, nor exercised ownership of, the disputed lot. On February 8, 1916, Smith and wife conveyed to the appellee D. H. Howard two lots, 13 and 15 in block 5, J. L. Smith addition to Harlan, Ky., each 25 by 100 feet, adjoining the property of appellant. Subsequently, Smith and wife made a deed to appellee D. H. Howard to a third lot, No. 11 in block 5. At the time he accepted his deeds, his lots were vacant. About three years after he accepted them, he built his residence near the center of the 75-foot front, embraced by his deeds. The appellant lived on his lot at the time the appellee D. H. Howard built his residence on his lot. At that time a stone was planted as a corner at the southeast corner now claimed by appellees as lot No. 15, and ''there was a fence there about three feet high, two runners of plank at the bottom and one at the top.'' The appellee D. H. Howard removed the old fence on or near the line of lot No. 15, and erected another in its place. His fence began at, and ran from, a large post on the line of lot No. 15 where he now claims the line should run. He moved into his residence in November, 1919. His fence was built the following spring. The appellant, after receiving his second deed, asserted no title to, and exercised no right of possession over, lot 15 as claimed by appellee D. H. Howard until Smith and wife sold and conveyed to Silver certain lots in block No. 5.

After Silver purchased and accepted deed to his lots, he discovered that there was an unnumbered lot and more land embraced in his purchase than he in fact believed he had bought from Smith and wife. The appellant thereupon began to assert title under his second

deed from Smith and wife to him to lot No. 15, as against the appellees. This suit was filed to recover of appellees possession of lot No. 15, the appellant insisting that by correct survey of block No. 5, it is embraced by his deed. He insists that, if the survey is made by beginning at the northeast corner of the triangular lot in block No. 5, running with River street the distance shown by the map filed in the county clerk's office, purporting to have been made by Smith in the subdivision of the lots, this gives lot No. 15 to him. He insists that, by the survey made according to the map, the correct corner between his and appellees' lot is the southeast corner of lot No. 13, as shown by the map. He is not entitled to prove his title to or establish his corner by showing that the disputed lot is not embraced within the appellees' deed. While this might have an indirect bearing as secondary evidence, it fails as substantive proof. White v. Philpot, 221 Ky. 529, 299 S. W. 173. The second object called for in appellant's deed as described therein is in existence and not disputed. Using it as the beginning point, and reversing the call in his deed, the appellant's lot may be correctly surveyed, and his and the appellees' corner correctly located. Cornett v. Ky. River Coal Co., 175 Ky. 718, 195 S. W. 149; Combs v. Valentine, 144 Ky. 184, 137 S. W. 1080.

It is to be noted that the appellant's deed calls for the stone in River street, the southeast corner of lot No. 15. It is shown by the testimony of the appellee D. H. Howard and of J. L. Smith that a stone was planted at the southeast corner of lot No. 15 at the point where the post was set by him when he accepted his deed and which he now claims is the correct corner of lot 15. According to the evidence, this stone had been planted at this point, prior to the time appellant's second deed was executed and delivered. It is not shown that there ever was or is now any stone planted at the southeast corner of lot No. 13 on River street, which applicant claims is the correct corner between him and appellee.

The second call in appellant's deed is "a stone in River Street at the west side of the road running down the branch." Using this as the beginning point for the purpose of surveying the appellant's lot and running to the stone at the southeast corner of lot No. 15, which the appelle D. H. Howard claims is the correct corner between his and the appellant's lots, the distance is 90 feet, whereas the appellant's deed calls for 75 feet. If

the line is extended to reach the point claimed by appellant as the correct corner, the distance is 115 feet. It is satisfactorily shown that the stone at the southeast corner of lot No. 15, which appellee D. H. Howard claims to be the correct corner of his and appellant's lots, is the stone called for in appellant's deed, and that appellee D. H. Howard is the owner of lot No. 15, located as it is claimed by him.

At the close of the evidence of appellant, the appellees moved for a peremptory instruction which the court refused to give to the jury. At the conclusion of all the evidence, both parties moved for a peremptory instruction. The court overruled the motion of each, and refused to give a peremptory instructon for either. The court on its own motion gave instructions which in fact submitted both the law and facts to the jury. The instructions given by the court to the jury were not objected to by either side. In his motion and grounds for a new trial, appellant makes no complaint of the instructions of the court given to the jury. The court permitted the wife of D. H. Howard to testify in his behalf. She was made a party defendant. Her testimony was incompetent. Section 606, Civil Code of Practice. But it is immaterial and not prejudicial to the rights of the appellant. Its admission does not warrant a reversal.

The verdict of the jury is amply sustained by the evidence without considering her testimony. The appellant received a fair and impartial trial at the hands of the jury under instructions of the court not objected to at the time they were given.

The appellees during the progress of the trial offered an amended pleading in which they relied on the statute against champerty and maintenance. At the time of the execution and delivery to appellant of the second deed, the appellees had title to, and actual possession of, lot No. 15, claiming it adversely up to the rock corner, and the fence running from it in the line of lot No. 15, to which they asserted title. If the appellant's first deed did not embrace lot No. 15 in its description of the lot therein conveyed to him, and if the second deed by oversight or otherwise was so written as to include it, in that event, and to that extent, the second deed of appellant was within the statute against champerty and maintenance. Jones v. O'Connell et al., 237 Ky. 219, 35 S. W. (2d) 290; Irwin v. Westwood Real Estate & Develop-

540

ment Co., 200 Ky. 760, 255 S. W. 546. Under the rule announced in those cases, champerty and maintenance may be proved under the general issue.

Perceiving no error prejudicial to the substantial rights of appellant, the judgment is affirmed.