## Edwards et al. v. Clark et al.
(Decided Dec. 20, 1935.)

RAY C. LEWIS and A. D. HALL for appellants.

D. M. ALLEN for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—
Affirming.

Cy Creech, prior to December 27, 1901, owned a boundary of land situated on Gum Fork of Sexton's creek, Clay county, Ky. He conveyed it to J. H. Clark. On the same date, J. H. Clark and wife, Martha Clark, conveyed of this tract, 102 acres, to E. V. Wysbord, which is described in part as follows:

"Beginning at a forked oak bush on the Creech branch near the road; thence up the hill east to upper corner of orchard fence; thence with the fence east as now stands to John G. White's line, etc."

Clark's deed conveyed to Wysbord "a right of way through his (Clark's) land near the Creech house out to the road near the said house for the removing of anything to or from the east side of the before named boundary." On the 8th day of March, 1908, Wysbord conveyed this tract to Thomas D. Durham, Durham's deed contains the same boundary, described in the Clark deed to Wysbord, including the right of way. Previous to the dates of these deeds, on the 17th day of December, 1904, J. H. Clark and wife, Martha Clark, conveyed that portion of the Cy Creech tract not included in the deed to Wysbord to Robert Clark. Robert Clark immediately entered upon and took actual, open, and visible possession thereof, including an old orchard and cleared land inclosed by a fence, and thereafter continuously occupied the same, using the old orchard and cleared land up to the old fence, until the 20th day of January, 1929, when he conveyed it to James H. Clark. At the date of Clark's deed to Wysbord, the boundary of land described in Clark's deed to him was in timber and unimproved. Wysbord at that time was

engaged in the manufacture of staves, and for that purpose purchased and acquired title to the land. Neither Wysbord nor Durham or anyone for either of them actually entered upon the land conveyed by Clark to Wysbord during the life of Durham, except to cut and remove the timber therefrom, which Wysbord did before he deeded it to Durham. Durham was drowned about 25 years before this action was instituted, leaving a widow and two small children. After arriving at age, one of whom was at the institution of this action about 32 years old, and the other a few years younger, they brought this action against the heirs of J. H. Clark, asserting that the latter were wrongfully claiming title to about 10 acres of the boundary described in Wysbord's deed to Thos. Durham, extending across the entire south end thereof. The Clarks defended, admitting the Durham children's title to the land described in their petition, and alleging that it did not include the 10 acres in controversy; the same were embraced in the deed of Robert Clark to J. H. Clark, and they, and those under whom they claimed it, had been in the actual, adverse, open, continuous possession of the 10 acres which they averred included an old orchard, for more than 30 years next before the bringing of this action. After issues were formed by necessary and proper pleadings, on the evidence introduced, the court dismissed their petition and decreed that the land in controversy was not included in the Thomas Durham deed, but belonged to the Clarks.

The deed of J. H. Clark to Robert Clark antedates the deed of Wysbord to Durham by four years. The testimony establishing Robert Clark's actual, open, visible possession of the disputed land prior to, and at, the date of Wysbord's deed to Durham, is uncontradicted. Thus, it is shown that Durham's deed is within the inhibition of the statutes of champerty and maintenance (Ky Stats. sec. 209 et seq.) which may be established under the general issue without special plea of the statute. Jones v. O'Connell, 237 Ky. 219, 35 S. W. (2d) 290.

Leaving this aside, the evidence discloses that R. R. White undertook to survey the Durham land. According to his survey, and his testimony in support thereof, upon which the Durham heirs mostly rely to establish their paper title to the disputed acreage, the Durham

deed embraces the disputed land. White deposed that he had twice surveyed the Durham land; that Ellie Chestnut and Billie McDaniel "identified a point" he used on the first occasion, as the beginning object called for in Wysbord's deed to Durham; that he "ran with the fence a line, as it stood, a little south of the east course to the line of the White land." At the time he made the second survey, Nelse Brey, Alice Brey, and Theo. Lunsford pointed out to him "where the oak bush stood," "just a little south of the workshop;" which he used as the object called for in Durham's deed; and then he "ran a line as pointed out by them as where the old fence stood to the one of the White land." He estimated the disputed land to contain 8 1/10 acres. Ellie Chestnut and Billie McDaniel were not introduced as witnesses. White does not claim that the "bush" which they pointed out to him was marked as a corner or that it was a corner called for in the Durham deed or an agreed corner of the Durham or the Robert Clark land. Nelse Brey, Alice Brey, and Theo. Lunsford testified they did not know that the object identified by them and used by White in making the last survey was marked as a corner of either tract. Nor does White undertake to say that it was a corner called for in Durham's deed, or that it was marked in any manner. Two of the sons of Cy Creech born and reared on the Creech land, who were men beyond middle life, testified that within their memory there were two shops to the location of which much testimony was directed. The first was a small blacksmith shop located at a different place from that at which the second one was later erected, and that the forked white oak bush called for in the Durham deed, or the "scrubby" oak called for in J. H. Clark's deed to Robert Clark, was located "just west of the upper corner of the orchard and down the hill across the road," "up the branch, 50 or 75 yards on the other side of the branch from the old shop house;" "Jimmie Clark said Cash Rawlings had made it a corner." The orchard fence ran "from this white oak" up a bluff from the Creech branch, above the orchard in an eastwardly direction to the White line." The fence to the White line had been changed 15 or 20 feet "in the edge of the bushes." "Moved down to the edge of the cleared land." "Then at the lower end it had been changed up the hill from about six feet to where it was." "There was (another)

fence that ran from the Creech branch up above the house (the Creech residence) and joined to the smoke house. It dropped below the garden from the smoke house and ran down the hill below the barn to the foot of the hill at the lower big hollow, the cotton bush hollow,'' or ''the Lunsford branch.'' It is also shown that there was a road on the inside (Clark's side) of the fence which began at the forked white oak, located by Creech's sons, running to White's line. This road seems to have been abandoned, but the impression thereof still remains. Numerous witnesses located the old orchard and the fence inclosing the same, as a part of the land of the Clark heirs, and the existence of the fence from the forked white oak to White's line. J. H. Clark's deed to Robert Clark calls for the white oak bush on the Creech branch at the point at which Creech's sons located it. This deed also recognizes the existence of the old orchard and the fence inclosing it. Indeed, it calls for the upper corner of the orchard fence as an object with which the line ran, and ''thus, with the fence as it now stands to White's line.'' Wysbord's deed calls for the same line to the upper corner of the orchard fence, ''thence, to the fence as it now stands to John G. White's line.''

It is apparent there is no overlapping of the boundaries. The beginning object from which White made his survey is not authoritatively nor adequately identified as an object called for in either deed. There is no conflicting evidence as to Robert Clark's possession of the old orchard which includes the 8 1/10 acres now in dispute, as inclosed by the old fence running from the oak corner near the old shop to the White line.

It is very plain that the Durham deed does not include the disputed land. It is positively shown that Robert Clark was not only in actual possession of it at the time Wysbord's deed was executed and delivered to Durham, but the Clark heirs and those under whom they hold possession have been in the actual, adverse, open, and continuous possession of it for more than 30 years before the commencement of this action.

It is argued that the statute of limitation cannot be invoked by the Clark heirs, because at the death of Durham, his children were infants, and since their arrival at the age of 21, they have been continuously under the disability of coverture. This argument over-

looks the evidence showing the actual, visable, adverse possession of Robert Clark began during the life of Durham, and hence, the statute of limitation as to Durham commenced in his lifetime, and infancy and coverture occurring after the commencement of the operation of the statute of limitation, and continuing thereafter for a period of more than 30 years next before the commencement of the action, the disabilities of infancy and coverture of his children will not, in the circumstances suspend the statute of limitation. In other words, such possession for a period of 30 consecutive years is a complete bar of Durham's children's right to recover the disputed land, though during either all or a portion of that time they were under the disability of both infancy and coverture. Bradley v. Burgess, 87 Ky. 648, 10 S. W. 5.

The judgment of the circuit court being in conformity herewith, it is affirmed.