## Martin et al. v. Wilson.

Dec. 16, 1941.

As Modified on Denial of Rehearing Feb. 3, 1942.

W. D. Gilliam and N. G. Goad for appellants.

Noel F. Harper for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The appellee, R. E. Wilson, brought this action in the Allen Circuit Court against G. L. Martin and L. D. Martin to recover of them on their promissory note for the sum of $940.74, dated January 8, 1929, and due one year thereafter, and bearing interest at the rate of "—%" per annum from date. The plaintiff also procured an order of attachment which was levied upon certain property of the defendants.

Defendants entered motion to discharge the attachment and also filed their general demurrer to the petition and without waiving same filed their joint and separate answer and counterclaim. Defendants admitted that they executed the note sued on but denied the grounds of attachment and denied that the note was past due or wholly unpaid or that it is just, and denied plaintiff's right to recover thereon, and further averred that the note had been fully paid and satisfied.

By paragraph 2 defendants pleaded as their counterclaim that the note sued on was a renewal of a note for the same amount due two years prior thereto, or January 8, 1927, which fact is stated in the face of the note; that the note which was due January 8, 1927, was a renewal of a note originally executed by the defendant G. L. Martin, with defendant L. D. Martin as surety thereon, dated on or about May 3, 1921, which was then in the principal sum of $600; that interest on the note was computed by the plaintiff at the rate of 10% per annum and that the 10% was added to the principal of the note that was made on January 8, 1927, of which the note sued on is a renewal and that $940.74 represented by the note sued on is the original $600 borrowed by defendant G. L. Martin on or about May 3, 1921, plus interest calculated at the rate of 10% per annum to January 8, 1927, and G. L. Martin paid to plaintiff in cash $188.14, same being interest calculated at 10% per annum from January 7, 1927, to January 8, 1929, the date of the note sued on, an alleged that they are entitled to have the note purged of the usury embraced therein to the extent of 4% per annum, and that they have credit on the note for said amount to be applied on the note as of the beginning date, May 3, 1921, from which date interest was calculated at 10%. They asked that the court reduce the amount claimed in the petition to the extent that plaintiff be entitled to recover of defendants only the sum of $600 with interest at legal rate from May 3, 1921, until paid.

G. L. Martin further alleged that beginning in the year 1918 or 1919 and for several years thereafter, he and plaintiff had had numerous transactions and that he, Martin, made and executed to the plaintiff various notes, due bills, and evidences of indebtedness, some of which had been paid by the defendant, others renewed and combined with other evidences of debt due by defendant to the plaintiff, and asked that the court require the

plaintiff to produce all evidences of indebtedness which he may have against the defendant so that the conclusion of this action will finally conclude all claims which plaintiff may have against defendant or his codefendant, L. D. Martin.

For further counterclaim the defendants alleged that on August 14, 1919, G. L. Martin purchased of the plaintiff certain real estate, paying him therefor a part in cash, and executed and delivered to him two lien notes in the sum of $1,000 each due one and two years from date respectively; that G. L. Martin paid the first note when due on August 14, 1920, and paid to plaintiff the sum of $60, being the legal interest thereon up to August 14, 1920; that several years thereafter defendant, realizing that he could not pay the balance of the purchase price of the real estate, executed a deed to plaintiff conveying the property back to him and it was understood and agreed at the time that the consideration therefor was that the plaintiff was to give the defendant credit on his obligations to him for the full amount thereof.

G. L. Martin further alleged that the plaintiff collected rents on the property and that he, Martin, is entitled to credit for such sums as were paid to plaintiff on defendant's indebtedness, being approximately $477 collected from C. B. Briley, and $52.50 collected from H. K. Cox; that in addition thereto, in the year 1927 defendant worked for the plaintiff for which he promised and agreed to give defendant credit of $25; that in the year 1929 defendant sold to plaintiff stoves for which he agreed and promised to pay defendant the sum of $23 to be credited on his note, making a total amount of credits to be given defendant on the real estate note the sum of $637.50, which included the $60 interest on the unpaid $1,000 note which was settled by a reconveyance of the property to the plaintiff referred to above. Defendants further alleged that the only two items of indebtedness owed by G. L. Martin to plaintiff in 1930 at the time of the reconveyance of the real estate to plaintiff was the original sum of the $600 note made in 1921, and the $1,000 note representing a part of the purchase price of the real estate in 1919, being the same note settled by the reconveyance of the real estate mentioned above.

G. L. Martin further alleged that the consideration of the conveyance of the real estate back to plaintiff was $2,300 which was to be applied to the indebtedness owing

plaintiff by defendant, which indebtedness he now alleges would not and could not have exceeded the sum of $1,721.36, making the amount of overpayment to the plaintiff at the time of the execution and delivery of the deed reconveying the property, the sum of $578.64, and alleged that he was entitled to judgment against the plaintiff for that sum with interest from February 17, 1930, the date of the reconveyance of the real estate.

For his separate answer L. D. Martin alleged that he was only a surety for his brother, G. L. Martin, at the time of the execution of the original note of $600 in May, 1921, which fact was known to the plaintiff at the time he signed each of the renewal notes mentioned January 8, 1927 and January 8, 1939, respectively, and that more than seven years have elapsed since the note was due and before the filing of plaintiff's petition herein, and he pleaded the seven years' statute as a bar to any recovery against him as such surety. We may say here, however, that the question of limitation is not insisted on in this appeal and we will give this plea no further consideration.

G. L. Martin further alleged that the usurious interest that he had paid the plaintiff, plus other credits to which he was entitled, mentioned above, plaintiff was indebted to him in the sum of $578.64 and prayed that plaintiff's petition be dismissed and that he take nothing thereby and that G. L. Martin be given judgment on his counterclaim in the sum last mentioned above.

After defendants filed their answer and counterclaim, plaintiff filed his second petition, in equity, setting out certain other business transactions between himself and defendant G. L. Martin and claiming certain other items of indebtedness owing to him by G. L. Martin. He first set out the real estate transaction mentioned in the answer and counterclaim whereby he sold to G. L. Martin certain real estate on August 14, 1919, and set out the execution of the two notes of $1,000 each, representing a part of the purchase price, and alleged that on February 17, 1930, the time of the reconveyance of the real estate to Martin for the consideration of $2,300, the unpaid $1,000 note amounted to $1,630 and that it was agreed that the difference between this sum and the $2,300 should be applied on other notes owing plaintiff by defendant as provided in a clause of the deed, which reads:

"Second party surrendering to the first party a certain note bearing date Aug. 14, 1919 and all interest accrued thereon, said note being one of the notes mentioned in the deed from R. E. Wilson, and lien being retained in said deed to secure the payment of said note, and second party further agrees to credit the difference between the proceeds of the above mentioned note and $2300.00 on other notes given Wilson by G. L. Martin."

He set out certain other items of indebtedness owing to him by defendant which we summarize as follows: a note of $250 dated March 19, 1921, at 6% interest, which amounted to $385 on February 17, 1930, the date of the reconveyance of the real estate; a note of $96.67, with 6% interest, dated February 8, 1924, which amounted to the sum of $131.47 on February 17, 1930; a note of $75 dated September 21, 1924, which amounted to $99.59 February 17, 1930; a note of $40 dated March 8, 1926, which amounted to $49.60 February 17, 1930.

Plaintiff further alleged that on April 8, 1930, at the special instance and request of defendant, plaintiff paid to the Farmers National Bank of Scottsville, Kentucky, for the defendant, $100 which defendant agreed and promised to pay him but has not done so; that at the request of defendant, plaintiff paid taxes and insurance on defendant's real estate in Scottsville for several years for which defendant agreed and promised to reimburse him but has not done so. He refers to the total amount of this item as being shown by exhibit 7. The credits and debits of this item are somewhat confusing but apparently the unclaimed amount is $48.60.

Plaintiff further alleged that at the time of the reconveyance of the real estate February 17, 1930, the defendant was indebted to him in the sum of $2,578.80 after deducting all credits of every kind up to that time, and that defendant is entitled to a credit of $2,300, leaving a balance of $278.80 due plaintiff. He further alleged that at the time of the reconveyance of the real estate the purchased lien note of $1,000 which had amounted to $1,630 was cancelled and that it was agreed between the parties that the difference between this sum and $2,300 representing the purchase price of the property reconveyed, which was $670, was to be distributed as credit on all the other indebtedness owing plaintiff by defendant as of date February 17, 1930.

He further alleged that in the meantime defendant had moved to the State of California and was for several years a nonresident of the State of Kentucky, and both parties agreed that they would get together and settle all the indebtedness but that after defendant returned to Kentucky he failed to meet with plaintiff for the purpose of making settlement. He prayed to recover of defendant in this last action the sum of $278.80 representing the balance on defendant's indebtedness to plaintiff as of date February 17, 1930.

G. L. Martin filed his answer and counterclaim to the second petition of the plaintiff, and in reference to the purchase and reconveyance of the real estate as mentioned in previous pleadings as of date August 14, 1919, and February 17, 1930, he reiterated, in substance, the allegations of his answer and counterclaim in the first action but denied that the difference between the amount of the note cancelled, or $1,630, and $2,300 was to be applied on other indebtedness, except as pleaded in his answer to the first action, and denied that the note referred to in plaintiff's second petition is the one mentioned in the deed, and alleged in this connection that plaintiff filed with his petition the note due August 14, 1920, instead of the one due August 14, 1921, and therefore plaintiff did not cancel the proper note paid by defendant. He admitted, however, that at the time of the execution of the deed reconveying the property to plaintiff the note amounted to the sum of $1,630.

Defendant admitted the execution of the $250 note set out in plaintiff's second petition, but alleged that in June, 1921, and after the execution of the note, defendant conveyed to plaintiff two lots in the city of Scottsville for the sum of $240, and while the deed recites that the consideration therefor was cash in hand paid, same is not correct, but the $240 was to be credited upon the $250 note thus reducing it to $10, and admitted that plaintiff was entitled to that sum. He also admitted the execution of the note for the sum of $96.67 as alleged in plaintiff's second petition, but averred that the note represented usury to the extent of 4% on the $1,000 real estate note for the two years and five months for which sum he was entitled to credit by plaintiff. He further admitted that he owed plaintiff the $75 note mentioned in the petition, with interest thereon, and also the $40 note, but denied that he owed plaintiff the $100 item alleged

to have been paid by plaintiff to the Farmers National Bank of Scottsville, and denied that he owed the check filed as an exhibit, purporting to show certain payment of that sum by Martin. He also denied that plaintiff paid taxes, insurance, etc., as set out in exhibit 7 filed with plaintiff's petition. He denied that on February 17, 1930, he was indebted to plaintiff in the sum of $2,578.80 after deducting the credits that he was entitled to at that time, or that he was entitled to a credit of only $2,300, leaving a balance due plaintiff in the sum of $278.80 on February 17, 1930. Defendant further admitted that he owed the plaintiff certain items set out in the petition, the total sum of $170.59 which should be deducted from the sum of $578.64 which he prayed to recover on his counterclaim in the first action, thereby reducing his counterclaim to the sum of $408.05. He asked that this action be consolidated with the previous action and prayed to recover on his counterclaim the sum of $408.05. No formal order was made consolidating the two actions but they were considered and tried together as one action in equity without the intervention of a jury.

The evidence was taken by deposition and upon a trial of the case the chancellor rendered judgment in favor of the plaintiff in the sum of $940.74 subject to a credit of $77.56, and sustained the attachment and ordered a sale of the attached property in satisfaction of the judgment. Defendants have appealed.

It is insisted that the proof was insufficient to justify the chancellor in sustaining the attachment, and that same should have been discharged. The grounds of attachment were denied in the answer and also a motion made to discharge the same, which motion the court overruled. The proof is amply sufficient to sustain the attachment and the court did not err in overruling the motion to discharge it. Furthermore, it appears that the defendants have superseded the judgment and no steps have been taken to sell the property or otherwise enforce the judgment. We assume that if the property is sold pursuant to the court's order and judgment, the Master Commissioner will not sell more than may be necessary to satisfy the judgment. That matter can be taken care of in the report of sale and by the court's order approving or disapproving the sale. The only other ground insisted on for a reversal of the judgment is that it is contrary to the preponderance of the evidence.

Without giving a detailed resume of the evidence it suffices to say that upon examination of the evidence for ourselves we find that the testimony of the witnesses and the attendant circumstances are in sharp conflict. We may say, however, that conceding, without deciding the question, that the evidence preponderates in favor of appellant G. L. Martin with respect to the $60 credit Martin claims to be entitled to as interest paid on the $1,000 note which was cancelled pursuant to the reconveyance of real estate and also on the question of usury, particularly the note for $96.67 dated February 8, 1924, yet, in view of the judgment rendered, we are unable to determine whether or not the above items were allowed or disallowed.

It should not be forgotten that in plaintiff's second action which was consolidated and tried with the first one, he asked to recover of defendants the sum of $278.80 in addition to the note sued on in the first action, aggregating the sum of $1,219.54 which is $356.36 more than the judgment. The chancellor rendered no opinion nor made any separate finding of facts, hence, we are not informed as to what items were disallowed aggregating the $356.36. The note for $96.67, alleged to be for usury, had amounted to $131.47 in February, 1930, and adding to that sum the $60 credit claimed by defendants, plus the interest on the latter, and further adding the $77.56 credit allowed by the court in the judgment, the aggregate of these sums does not amount to the $356.36 which the court deducted from the aggregate sum claimed by plaintiff in the consolidated actions. So far as we know, the chancellor might have decided the above two items in favor of appellant.

Regarding the other items in controversy, namely, the $100 which plaintiff claims he paid the bank for G. L. Martin; the $250 note on which Martin claims he is entitled to a credit of $240 for the lots conveyed to plaintiff in Scottsville, and other miscellaneous items set out in exhibit 7 filed with plaintiff's petition, we find the evidence on these items very conflicting. Certain correspondence between the parties regarding the $100 bank item is filed with the record, including two letters from G. L. Martin to the plaintiff, one of which indicated that he, Martin, recognized his obligation to plaintiff on this item and the other one indicated that he was to have credit for this $100 on the reconveyance of the real estate

in February, 1930. With reference to the $250 note, plaintiff testified that he paid cash for the lots in Scottsville conveyed to him by defendant, and denied that any part of the purchase price was to be credited on the $250 note. The deed recites, in substance, that the purchase price was paid in cash. The evidence is likewise conflicting on the items set out in exhibit 7 for insurance paid on the property, rents, labor, etc. The evidence is such that we are left in doubt as to the truth of it and in these circumstances we are not authorized to reverse the finding of the chancellor. Jones v. O'Connell, 237 Ky. 219, 35 S. W. (2d) 290; People's Bank v. Baker et al., 238 Ky. 473, 38 S. W. (2d) 225.

Since we find the evidence sufficient to sustain the chancellor on a sufficient number of items and amounts aggregating the sum of the judgment, we find no reason for disturbing the judgment of the chancellor.

Judgment affirmed.